## Wentz's Estate.

*H. Gordon McCouch,* for accountant.

Holland, P. J., March 4, 1929.—Daniel B. Wentz died on Feb. 8, 1926, having made his last will and testament bearing date April 9, 1923, duly probated Feb. 13, 1926, wherein and whereby in the eighth item all the rest, residue and remainder of his estate, whatsoever and wheresoever situate, whether in his own name or held in trust subject to his power of appointment, or to which he should be in any way entitled at the time of his death, he gave, devised and bequeathed, limited and appointed to the trustees, their heirs, successors and assigns, in trust, nevertheless, for the following uses and purposes:

To let or demise the real estate (except his country place known as "The Orchard," on Washington Lane, Chelten Hills, Montgomery County, Pa.), and to invest and keep invested all moneys and personal property in such manner as the trustees should deem proper, and the same from time to time to call in, sell, assign, dispose of and again invest as aforesaid, and to collect, receive and recover the rents, income and interest thereof, and, after deducting all proper expenses for the execution of the trust, to pay over, when and as received, and not by way of anticipation, the entire net income thereof to his wife, the said Louisa F. Wentz, for and during the term of her natural life and upon her death to convey, transfer and pay over the principal of said trust fund equally to and among his then living lineal descendants, *per stirpes* and not *per capita.* He made further provision in the event of his leaving no lineal descendants living at the time of the death of his wife, which provision, for the purposes of this adjudication, we deem it unnecessary to refer to.

In the ninth item he directed that out of the general income of the estate, before making the distribution provided for in the above section, the trustees were to pay all taxes, insurance of all kinds, water rent, repairs and such

other charges as are necessary to maintain his country seat known as "The Orchard" in proper condition, and to permit his said wife to occupy the premises free of rent during the term of her natural life. He stated that he did not intend by this provision that the trustees should pay the household expenses, but only the cost of maintaining the property in good condition, and should his wife at any time desire to live elsewhere, she may request the trustees to lease the property, in which event the net income therefrom shall be by them paid over to her, and in the event of a sale of said property, with her consent, the proceeds thereof shall be invested and the net income paid over to his wife for and during the term of her natural life, the principal upon her death becoming part of the residuary estate.

In the tenth item he directed that all stock dividends or proceeds of sale of subscriptions to stock shall be treated for the purposes of the will as principal and not as income.

Testator was survived by his said wife, Louisa F. Wentz, and by issue two children, the said Daniel B. Wentz, Jr., and Mary Douglas Wentz. Said widow and children are still living. Mary Douglas Wentz is in her minority and the guardian of her estate is Girard Trust Company.

By schedule of distribution attached to the adjudication by this court upon the first account of the executors, entitled No. 24, November Term, 1927, there was awarded to the testamentary trustees the *corpus* of the trust in unconverted investment securities and cash amounting to $749,965.63.

The account was filed Oct. 25, 1928, showing a balance of the principal of the trust $752,483.09, composed of unconverted investment securities set forth on pages 2 and 3 of the account carried at $738,736.89, and cash, and a balance of income, $52,432.75. The distribution income account shows that Louisa M. Wentz has received $52,932.75, leaving a balance due accountants of $500. In addition to the securities set forth on pages 2 and 3 of the account as composing the balance of principal, the trustees hold certain securities as set forth in a memorandum on page 7 of the account, which securities are considered worthless.

All parties presently interested in the estate have approved the account and request its confirmation by the court.

The transfer inheritance tax was paid at the time of the filing of the executor's account.

By their agreement in writing submitted at the audit, Louisa F. Wentz, the widow; Daniel B. Wentz, Jr., the son, and Girard Trust Company, guardian of Mary Douglas Wentz, the minor daughter of testator, being all the persons having any interest, vested or contingent, in the estate, agree that at the time of the death of the testator, Feb. 8, 1926, he was the holder of 1874 shares of the stock of the Virginia Coal and Iron Company of the then book value of $223.12 per share, $418,126.88; that on June 26, 1928, the capital stock of said company was increased from $5,000,000 to $10,000,000 and a stock dividend of 100 per cent. was declared, the trustees here receiving 1874 shares, which are held in suspense account, as shown on page 5 of the account, until it be determined by the court how they shall be apportioned as between principal and income; that the book value of such shares of stock after the declaration of the dividends was $121.094, $226,930.16; that the number of additional shares necessary, therefore, to maintain the intact value of principal at the reduced book value of $121.094 per share is 1579, less $13.71, leaving 295 shares, plus $13.71, the disposition of which, in view of the tenth article of testator's will, the court will determine; that market value has never exceeded book value.

The tenth clause of the will is as follows:

"Tenth. I direct that all stock dividends or proceeds of sale of rights of subscriptions to stock shall be treated for the purposes of this will as principal and not as income, but the proceeds from the sale of standing timber and royalties from oil or coal lands shall be treated for the purposes of this will as income and not as principal."

The question is submitted whether under the agreed facts such provision is valid as to the excess of such dividend over and above what is necessary to keep the original holding of the stock intact as of the value at the time of the testator's death as offending against the provisions of section 9 of the Act of April 18, 1853, P. L. 503, which reads as follows: "That no person or persons shall, after the passing of this act, by any deed, will, or otherwise, settle or dis-dispose of any real estate or personal property, so and in such manner that the rents, issues, interest, or profits thereof, shall be wholly or partially accumulated for any longer term than the life or lives of any such grantor or grantors, settlor or settlors, or testator, and the term of twenty-one years from the death of any such grantor, settlor, or testator, that is to say, only after such decease during the minority or respective minorities with allowance for the period of gestation of any person or persons, who, under the uses or trusts of the deed, will, or other assurance directing such accumulation, would, for the time being, if of full age, be entitled unto the rents, issues, interests, and profits so directed to accumulate, and in every case where any accumulation shall be directed otherwise than as aforesaid, such direction shall be null and void in so far as it shall exceed the limits of this act, and the rents, issues, interests and profits, so directed to be accumulated contrary to the provisions of this act, shall go to and be received by such person or persons as would have been entitled thereto if such accumulation had not been directed. . . ."

The well-established rule in Pennsylvania is that "An extraordinary corporate dividend is presumptively payable to the party entitled to the income at the time the dividend was declared; but this presumption must yield to proof of the fact, and if it appears that by such dividend the corporate assets are reduced below their value at the time the trust began, the principal must be made good before anything is awarded to income:" McKeown's Estate, 263 Pa. 78; Nirdlinger's Estate, 290 Pa. 457, 468.

Under the agreed facts in the case and the above firmly-established Pennsylvania Rule of Apportionment, the 295 shares plus of the extraordinary dividend are undoubtedly income. If the direction of the will were given effect, this income would be changed to principal. Such a direction is a clear violation of the statute and cannot be sustained. The tenth clause of the will, in so far as it does attempt to vary the established rule of apportionment, is null and void. We have been unable to find a parallel case in Pennsylvania, but In re Megrue, 155 N. Y. Supp. 1059, affirmed 217 N. Y. 623, is in point. The accountants are accordingly surcharged in principal with 1579 shares, at the book value of $121.094 per share, of the extraordinary stock dividend declared by Virginia Coal and Iron Company, payable July 10, 1928, to stockholders of record June 26, 1928, less $13.71. They are surcharged in income with 295 of said shares, plus $13.71.

The net ascertained balance of principal for distribution is awarded back to the testamentary trustees for the uses and purposes of the trust.

The net ascertained balance of income is awarded back to the testamentary tenant.

From Aaron S. Swartz, Jr., Norristown, Pa.