Maris's Estate.

Argued May 14, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Lucien B. Carpenter,* for appellant.—A direction in a will authorizing a trustee to regard as principal of a trust created by the will all stock dividends consisting of shares of stock of the corporations issuing them is valid, even when the stock dividends in question are charged against current earnings on the books of the corporation.

The appellate courts of this Commonwealth have not decided that such a direction violates the statute against accumulations: Wentz's Est., 12 Pa. D. & C. 398; Equitable Trust Co. v. Prentice, 250 N. Y. 1; McKeown's Est., 263 Pa. 78; Nirdlinger's Est., 290 Pa. 457; Earp's App., 28 Pa. 368.

This court has not decided that stock dividends, even when declared out of current earnings, are income as a matter of law and for all purposes: Equitable Trust Co. v. Prentice, 250 N. Y. 1; Robinson's Trust, 218 Pa. 481; Boyer's App., 224 Pa. 144; Jones v. Trust Co., 292 Pa. 149.

A similar direction has been sustained in the only case presenting the precise question here involved which has been decided by any appellate court: Equitable Trust Co. v. Prentice, 250 N. Y. 1.

If the direction in the will is invalid, the stock dividends in question should be awarded to the heirs of the testator under the intestate laws, and should not be awarded to the life tenant: Thistle's Est., 263 Pa. 60; Billings's Est., 268 Pa. 71; Weinman's Est., 223 Pa. 508.

*John V. Lovitt,* for appellee.—Under the Pennsylvania rule a stock dividend received by the trustee and repre-

senting profits earned by the corporation since the trust began is income: McKeown's Est., 263 Pa. 78; Flaccus's Est., 283 Pa. 185.

The federal tax cases do not require the abandonment of the Pennsylvania rule: Weiss v. Wiener, 279 U. S. 333.

Much stress is laid on the recent New York decision: Equitable Trust Co. v. Prentice, 250 N. Y. 1. The New York Court apparently followed the reasoning in the Eisner Case, 252 U. S. 198. This is exactly what our own courts refused to do under similar circumstances: Harkness's Est., 283 Pa. 464.

The inclusion of stock dividends declared out of current earnings as corpus of the estate amounts to an accumulation of income in violation of the provisions of the statute against accumulations: Sharp's Est., 155 Pa. 289; Martin's Est., 185 Pa. 51; Nagle's Est., 63 Pa. Superior Ct. 93; Neel's Est., 252 Pa. 394; Billings's Est., 268 Pa. 71.

The stock dividends should go to Addie L. Maris who is entitled to the entire income of the estate: Wentz's Est., 12 Pa. D. & C. 398.

Opinion by Mr. Chief Justice Moschzisker, June 21, 1930:

These two appeals, No. 232, by Addie L. Maris, widow of John M. Maris, the testator, and life tenant of his residuary estate, and No. 233, by the guardian of a minor residuary legatee, will be disposed of together. The second appellant complains because the court below held that a certain provision of the will now before us violated the act against accumulations, and the first, because the accumulations in question were awarded to the heirs of testator under the intestate laws, instead of to the widow, who was the life beneficiary.

Maris, after directing payment of debts and devising personal and household effects to his wife, provided as follows: "All the rest, residue and remainder of my es-

tate......I give......unto......, in trust, to hold and invest......, and after deduction of all proper charges and expenses of the trust, to pay over the net income thereof to [the wife of testator] for and during the term of her natural life." He then provided for the division of his residuary estate into three equal parts, which, at the death of the life tenant are to be paid over to others, one of the beneficiaries to take absolutely and the remaining two shares to be held in trust for the benefit of those entitled thereto. The residuary clause of the will also provides that "all stock dividends consisting of shares of stock of the corporations issuing them shall be considered as principal." This last provision gave rise to the present case.

The executors of decedent filed an account, containing, for distribution, certain stock dividends of the kind above described; in each instance, the dividend was paid out of current earnings, which accrued after the death of John M. Maris, and in no instance did the payment decrease the intact value of the stock involved as it stood at testator's death. Under Nirdlinger's Est., 290 Pa. 457, and prior cases there cited, dividends like those here in controversy (that is, stock dividends, paid from earnings accruing subsequent to death of testator, which do not decrease the intact value of the stock as of that time) are generally classed for purposes of distribution as income, and, since the present dividends were before the court for such a purpose, they would unquestionably fall within the decisions just mentioned, were it not for the direction in testator's will that they should be considered principal; but the court below decided that the testamentary clause in question was, "in effect, a direction to accumulate income contrary to the express provisions of the Act of April 16, 1853, P. L. 503," and, being such, it was inoperative. That conclusion meets with our approval, for no one can be permitted to set aside the public policy of the State by the simple expedient of designating by another name that which the courts have repeatedly decided to be income.

In Harkness's Est., 283 Pa. 464, 466-7, this court said it was a "rule of property," long established with us, that stock dividends, declared after the death of the testator, above the amount necessary to keep intact the value of the shares as they were at that date, must be distributed as income; and when a rule of property applies to a given state of fact, we have held that it controls, even though a testator, after providing for a condition to which it is applicable, may in effect provide also that the rule in question is not to control. For instance, in Lauer v. Hoffman, 241 Pa. 315, 317, 318, testator placed a provision in his will which required the application of the rule in Shelley's Case, thus creating a fee; then he added, "but in no event whatever shall the fee simple to the said real estate vest" in the devisees named by him. This court said that such a provision was "utterly inoperative to prevent the legal consequence" of the words which, under the rule in Shelley's Case, created the fee, and that this was so no matter how plain the contrary intent might be. In the present case, the testator provided that "all stock dividends shall...... be considered as principal." This provision, so far as the items now in controversy are concerned, runs counter to our established rule of property that such dividends, earned after the death of the testator, which do not decrease the intact value of the stock as of that date, are income,—a rule that cannot be avoided, as presently attempted, by, under a testamentary direction, treating dividends which would otherwise be considered income as principal, if, as here, the result of that course is to impinge on the act against accumulations. This being the case, despite testator's direction that all stock dividends shall be considered as principal, those here involved remain income; and, since this income is in effect ordered to be unlawfully accumulated, it becomes presently distributable. The law was correctly so held, under somewhat similar circumstances, in Wentz's Est., 12 Pa. D. & C. 398, which seems to be the only reported

Pennsylvania ruling directly approaching the precise point now before us.

The next question is, To whom does this distributable income legally belong? The court below decided that, because the direction which gave rise to the unlawful accumulation was contained in the residuary clause of the will, every provision in that part of the testament was affected, and no beneficiary there named could take the accumulated dividends. The fund in question was accordingly awarded to testator's heirs at law.

In making its distribution, the court below relied on the rule in White's Est., 8 Pa. Dist. R. 33, 35, enunciated as follows: "Accumulation is forbidden by the act no less *where it results by indirection* than where it is expressly ordered [the italics are ours]; striking down of the illegal accumulation leaves the will as if it had been silent on the subject, and future gifts are not accelerated. If the accumulation relates to a vested interest, taking effect in possession, the released income goes at once to the beneficiary [of that interest; but] if [the accumulation relates] to an interest not vested in possession, the income goes to the residuary legatee or devisee, unless the residuary estate itself is the subject of the provision, in which case the income goes under the intestate laws to the next of kin, or heirs." The court also cited Edwards's Est., 190 Pa. 177; Neel's Est., 252 Pa. 394, and Billings's Est. (No. 2), 268 Pa. 71, as having influenced its decision.

The above quoted rule, though originally announced by the late Judge Penrose of the Philadelphia Orphans' Court, has been adopted by us in terms (see Weinman's Est., 223 Pa. 508, 510; Neel's Est., 252 Pa. 394, 409-10, 412; Thistle's Est., 263 Pa. 60, 66); but the court below did not properly apply it to the facts of the present case.

On this appeal, we are dealing solely with accumulated income earned after the death of the testator, and, deleting the provision for unlawful accumulation, his will gives all such income to the widow, during her life.

Section 9 of the Act of 1853, P. L. 503, 507, provides that, where a direction for accumulation is contrary to the terms of that statute, "such direction shall be null and void in so far as it shall exceed the limits of this act and the [income] so directed to be accumulated......shall go to and be received by such person or persons as would have been entitled thereto if such accumulation had not been directed." Here, on the face of it, the widow is the person thus described; but, as previously stated, the court below thought that, because she derived her interest through the residuary clause, which part of testator's will also contains the direction for illegal accumulation, our decisions required it to distribute the accumulations now before us to testator's heirs at law. In reaching its conclusion, however, the court failed to recognize the distinction between this case and the decisions relied on by it, where, for reasons shown by our several opinions, we ruled that legatees named in the residuary clause containing the direction for illegal accumulations could not take the income there involved.

On the death of testator, the legal title to all of the assets in his residuary estate vested in the trustee named by him, his widow taking a vested equitable life estate. We have said that, to imply a legal estate from a devise of income, there must, ordinarily, be a gift of the gross income: Schuldt v. Reading Trust Co., 270 Pa. 360, 364; Id., 292 Pa. 327, 331-2. But where, as in the present case, property is placed in trust to pay the expenses of administration out of the income, and the net balance of income is given absolutely to a beneficiary, such beneficiary has a vested equitable interest in the principal which produces the income (Long's Est., 270 Pa. 480, 485); and, under the will now before us, on the death of testator, the widow's vested interest took effect in immediate possession. Hence, the accumulation with which we have to deal "relates," in the words of the guiding rule for distribution laid down in White's Est., supra, to "a vested interest taking effect in possession"; that

is, if the present accumulation had not been directed, the dividends involved would have belonged to the widow,—still alive and claiming,—who at the death of her husband immediately became possessed, and went into the enjoyment, of "a vested interest" in that part of his estate which produced the unlawfully accumulated income represented by the dividends here in question.

On the other hand, in all of the cases relied on by the court below, the persons laying claim to the unlawful accumulations either lacked a vested interest to which the accumulation related, or their interests had not taken immediate effect in possession, in the sense that the person claiming, or for whom the accumulations were claimed, had the enjoyment of his interest during the course of such accumulations. Thus their cases, unlike the present one, were not within the first part of the governing rule, laid down in White's Est., supra; they fell within the second part of that rule, which deals with accumulations relating to interests "not vested in possession," dictating that such income shall go to subsequent residuary legatees or devisees, unless the residuary estate itself is the subject of the provision which brought about the unlawful accumulation of the income in question and that, when it is, such income shall go to the next of kin under intestate laws.

This prohibition against those named in the residuary clause of a will taking released unlawful accumulations of income, and the direction, coupled therewith, that such funds shall go to the heirs at law of testator, have reference only to cases falling within the second part of the rule under consideration, which, as already pointed out, does not include the one now before us. In the present case the provision for the widow of testator is contained in the residuary clause of the will, but it gives her a vested interest to take effect in immediate possession, and the accumulations relate to that interest, therefore the case falls within the first part of the rule which the court below accepted as its guide, not within the

second, and the accumulations go at once to the widow, who is the beneficiary, just as they would go had the will named her as beneficiary prior to, instead of in, its residuary clause.

In Thistle's Est., 263 Pa. 60, 64, 69, the provision for illegal accumuations was contained in the residuary clause of the will; therein,. the testator provided that, for a given time, fixed sums should be paid to his three daughters, the balance of income to accumulate and, fifteen years after his death, these accumulations to be paid, with principal, to his daughters, or, in case of the death of a daughter before the date of distribution, then to others. We said (page 65) that if the three residuary legatees could "be held to have taken, at the death of their father, such a vested interest in the corpus of the trust estate from which the income in question [was] derived, as, disregarding the implied direction for accumulation, would entitle them to such income, . . . . . . then they [would have to] be awarded the whole of the. . . . . . fund"; but that, since the daughters (residuary legatees) had no such vested estate in immediate possession, the award of accumulated income must be to testator's heirs at law. Before making this award, however, speaking (at pages 66-7) in connection with the Act of 1853 and the rule in White's Est., we said, as to the test of the daughters' right to the accumulations, "Here, the residuary estate itself is the subject of the provision, so the controlling question. . . . . .is, do the accumulations in controversy represent income accruing on a vested interest taking effect in possession; [or] in other words, have the daughters [residuary legatees] the present beneficial ownership of the principal from which the income [unlawfully accumulated] was derived?" This, with its context, shows again that, had we found the daughters possessed of such an interest as just described, the award would have been to them, under the first part of the rule in White's Estate, instead of, as it was, under the second part of that rule, to testator's heirs at law.

Before closing, it may be well briefly to review the cases cited by the court below, showing that in none of them did the claimants to the unlawful accumulations meet the above stated test, and that in all of them the claimants came within the second part of the rule in White's Estate rather than the first. Moreover, in each of these cases and in others where the life tenant was refused an award of the unlawful accumulations, as, for instance, in Weinman's Est., 223 Pa. 508, the gift to the life tenant (that is, the devise or bequest itself) either directly or impliedly limited the amount of income that beneficiary should take, and thus excluded any addition thereto,—which is not so in the present case.

In Edwards's Est., 190 Pa. 177, the first of our cases relied on by the court below, testator, a widower, after directing payment of his debts and "other proper charges," placed the "clear balance" of his estate in trust, to pay a fixed portion of the income therefrom to his only child, a son, for life, and, after the death of the life tenant, to pay to others (not to be ascertained till that time) the accumulations of income over that portion paid to the son during his life. An account filed during the life of the son showed accumulations which, being held unlawful, were properly awarded to the heir of testator under the intestate laws (who happened to be the son). We say "were properly awarded," for the will expressly limited the income which the son should receive as life beneficiary and no one was designated therein to take either principal or accumulated income until the time for ultimate distribution arrived. The son took as heir, not as life tenant.

In Neel's Est., 252 Pa. 394, also relied on by the court below, we stated (pages 411-12) that the residuary legatees claiming the fund were "not entitled to actual possession of any part of [testator's] estate until after the death of [the life tenant]," and we further said (page 413) that the life tenant (who was dead) was not given

an absolute right to the whole income out of which the unlawful accumulations arose. So there, again, the accumulations were properly awarded to the heirs under the intestate law.

The next of our cases relied on by the court below is Billings's Est. (No. 2), 268 Pa. 71, 76, where, once more, certain illegal accumulations were awarded to the heirs at law. In affirming, we particularly noted that the will contained no specific gift of income, and called attention to the fact that, thereunder, the residuary legatees were "not entitled to possession of the corpus until the expiration of a specified time and [might] . . . . . . never be entitled to receive [it]."

In White's Est., 8 Pa. Dist. R. 33 (whose leading part in the branch of the law with which we are here dealing has already been explained), the equitable life beneficiary (named prior to the residuary clause of the will) was not given the whole of the net income, but only so much thereof as the executors might deem necessary for his maintenance, the balance to accumulate till the beneficiary in question attained the age of 25 years. On the death of this life tenant, the accumulations were to go to his issue, if he left lawful issue (see White's Est., 2 Pa. Dist. R. 207, 209). This created an unlawful accumulation of income, which, it was held (page 34), belonged to the "residuary legatees," because the life beneficiary was entitled to only so much of income as he had already received and (page 35) "the contingent character of the gift to [his] issue,"—"such issue as he may leave,"—prevented them from taking the accumulations.

It may be seen from this review of the cases relied on by the court below that in none of them did the accumulations in controversy relate, as here, to a vested interest in immediate possession, or enjoyment, of a life beneficiary to whom testator had in terms given the entire net income from his residuary estate, the gift itself containing no express or implied limitation on the right to take such income, or, in other words, of a beneficiary

entitled, by the terms of the will (deleting the direction for accumulations), to the whole net income of the trust fund out of which the accumulations arose. Further, it may be seen from our opinion in Thistle's Est., supra, that, had the facts in any of our prior cases, relied on by the court below, been as just outlined, the unlawful accumulations there disposed of could not have been awarded to either the heirs at law or the ultimate residuary legatees, but the award would have been under the first part of the rule in White's Estate, to the beneficiary with a vested interest in possession entitled generally to the income, albeit he or she was named in the residuary clause of the will; and that is the award which should have been made in the present case.

In Appeal No. 233, the decree is affirmed as far as it finds an illegal accumulation; and in No. 232, the decree is reversed so far as it awards the illegal accumulations to the heirs of testator under the intestate laws; and the accumulations in question are now awarded to testator's widow, as life beneficiary. Costs to be paid out of the estate.