## McIlhenny Estate

Before Klein, P. J., Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*Daniel J. Ryan, p.p.,* guardian and trustee, ad litem, for exceptant.

*Cuthbert H. Latta, Philip R. Hepburn* and *Richard B. Klein,* amici curiae.

*Norman H. Brown* and *H. Ober Hess* for *Ballard, Spahr, Andrews & Ingersoll,* contra.

LEFEVER, J., June 11, 1965.—Where there is an express direction to treat all stock dividends as principal in a pre-1939 trust which is to run for a period proscribed by the 1853 statute against accumulations, do stock dividends of six percent or less, received by the trust from 1960 to 1963, constitute income or principal? This is the issue before the court.[1]

Testator died on November 23, 1925. A trust was created by the residuary clause of his will. The trustees were directed to pay the net income to his widow for life or until she remarried; thereafter to pay the net income to his children and the issue of deceased children; and subject to certain limitations, at the expiration of 21 years after the death of all his descend-

---

[1] A number of estates pending audit before several judges of this court and in other courts throughout the Commonwealth raise the same issue.

ants who survived him, to pay the principal to his then living issue per stirpes, and in default thereof to a designated charity. Testator in his will expressly directed ". . . that all stock dividends . . . shall be treated as principal and not as income."

The current partial account involves only stock dividends of six percent or less, received by the trustees between December 28, 1960, and June 19, 1963. The learned auditing judge awarded them to the income beneficiaries.[2] Pursuant to instruction of the auditing judge, the guardian and trustee ad litem filed the exceptions to this award now before the court.

The statute against accumulations of April 18, 1853, P. L. 503, sec. 9, 20 PS §301.2 [Historical Note] provided:

"No person . . . shall . . . by any deed, will or otherwise, settle or dispose of any real or personal property, so and in such manner that the rents, issues, interest, or profits thereof, shall be wholly or partially accumulated for any longer term than the life or lives of any such grantor . . . settler . . . or testator, and the term of twenty-one years from the death of any such grantor, settler, or testator, that is to say, only after such decease during the minority . . . of any person . . . who . . . would . . . be entitled unto the rents, issues, interest, and profits so directed to accumulate . . . and in every case where any accumulation shall be directed otherwise than as aforesaid, such direction shall be null and void . . ."

The Act of May 25, 1939, P. L. 201, see 20 PS §301.6 [Historical Note], amended this act to make valid and

---

[2] It is to be noted that by adjudication, dated June 17, 1964, Judge Saylor awarded similar stock dividends to the income beneficiary, in the companion case involving the 1932 deed of trust of Frances Plumer McIlhenny, wife of the instant testator, no. 2196 of 1943, which contained a like direction that stock dividends be treated as principal.

enforceable any directions by the creator of a trust that "extraordinary dividends" or "profits realized from such stock" be treated as income or as principal. Thereafter, section 6 of the Estates Act of 1947, P. L. 100, further amended the act to provide:

"No direction or authorization to accumulate income shall be valid except:

"(8) APPORTIONMENT BETWEEN PRINCIPAL AND INCOME. The following directions or authorizations shall be valid:

"a. To apply to principal in whole or in part extraordinary dividends, regardless of the form in which they are paid . . ."

The 1956 amendment of the Estates Act further liberalized the act. However, all of the amendments were expressly stated to be prospective only as to trusts created and dividends received subsequent thereto. Therefore, a direction to accumulate income in this pre-1939 trust for the period here involved is prohibited, even though that income was received in 1960.

Under the Pennsylvania Rule of Apportionment any part of a stock dividend in excess of that required to maintain intact value was income. See Waterhouse's Estate, 308 Pa. 422, 428. Therefore, while this rule was law, a direction by a testator or settlor in a pre-1939 trust that "all stock dividends . . . shall be treated as principal" violated the 1853 statute against accumulations, because all or part of the stock dividend constituted income under the rule: Maris' Estate, 301 Pa. 20. In that case the court stated, at page 24:

"In the present case, the testator provided that 'all stock dividends shall . . . be considered as principal.' This provision, so far as the items now in controversy are concerned, runs counter to our established rule of property that such dividends, earned after the death of the testator, which do not decrease the intact value of the stock as of that date, are income,—a rule that can-

not be avoided, as presently attempted, by, under a testamentary direction, treating dividends which would otherwise be considered income as principal, if, as here, the result of that course is to impinge on the act against accumulations. This being the case, despite testator's direction that all stock dividends shall be considered as principal, those here involved remain income; and, since this income is in effect ordered to be unlawfully accumulated, it becomes presently distributable."

To the same effect are Warden Trust, 382 Pa. 311, 315, and Pew Trust, 411 Pa. 102, 109.

Section 5 of the Uniform Principal and Income Act of May 3, 1945, P. L. 416, 20 PS §3474, as revised by the Principal and Income Act of July 3, 1947, P. L. 1283, 20 PS §3470.5, provides:

"All dividends on shares of a corporation, forming a part of the principal, which are payable in the shares of the corporation itself of the same kind and rank as the shares on which such dividend is paid shall be deemed principal."

Section 2 makes an exception to the general applicability of the provisions of the act, namely:

"Provided, That the person establishing the principal may himself direct the manner of ascertainment of income and principal and the apportionment of receipts and expenses or grant discretion to the trustee or other person, to do so and such provision and direction, where not otherwise contrary to law, shall control notwithstanding this act."

Section 15 provides that the act shall apply "to receipts and expenses received or paid" after the effective date of the act.

Crawford Estate, 362 Pa. 458; Steele Estate, 377 Pa. 256; Jones Estate, 377 Pa. 473; Warden Trust, 382 Pa. 311, and Cunningham Estate, 395 Pa. 1, held that application of the Principal and Income Act to trusts created prior thereto was unconstitutional. Therefore,

during the period that these cases were law, the Principal and Income Act was inoperative to change the Pennsylvania Rule of Apportionment and the application of the 1853 statute against accumulations with respect to stock dividends and directions of testator that they be treated as principal in pre-1939 trusts. However, Catherwood Estate, 405 Pa. 61, and Norvell Estate, 415 Pa. 427, overruled the above-cited cases and decided that the Principal and Income Act was generally retroactively applicable to estates created before it.

The Supreme Court in recent cases has set up a special rule, applicable only to stock dividends of six percent or less. This was first suggested by Mr. Justice, now Chief Justice, Bell, in his concurring and dissenting opinion in Cunningham Estate, 395 Pa. 1, 34. Thereafter, Mr. Justice Jones in the majority opinion in Catherwood Estate, 405 Pa. 61, 77 and 78, stated:

"While we have never held that ordinary small stock dividends should be considered as income payable to the life tenant, we have not held to the contrary; our prior decisions dealt with stock dividends, extraordinary in nature. If a total stock distribution for the current year is payable at the rate of 6% or less of the corporation's outstanding shares before such distributions were made such distribution in stock of the distributing corporation should be treated as income."

The court then reversed the decision of this court that the stock dividends involved, all of which were less than six percent,[3] were apportionable. Significantly, in his concurring and dissenting opinion, Mr. Justice, now Chief Justice, Bell stated, at page 78:

"I enthusiastically agree with that part of the majority Opinion which holds that small stock dividends

---

[3] The stock dividends were 5 percent, 2½ percent, 2 percent and 2½ percent, respectively.

which do not exceed 6% in that particular year belong to the life tenant and are not subject to apportionment."

Finally, in Pew Trust, 411 Pa. 96, 102, the Supreme Court, speaking through Chief Justice Bell, stated that:

"In all the history of Pennsylvania Rule of Apportionment this Court has never held that stock dividends, up to and including 6%, were apportionable, but on the contrary all such dividends were considered income. Catherwood recognized and confirmed this historical fact. We believe it was not the intent of the Court in the Catherwood decision—but if it was, the dicta in a footnote * to that effect is hereby overruled—to abolish the right of a life tenant to *ordinary* stock dividends or ordinary cash dividends in pre-1945 trusts . . ."

The court then *decided* that the *stock dividends of six percent or less*, which were received *in this pre-1939 trust* by the trustees in 1961, belonged to the income beneficiary.

The court summarized the holding of Pew, at page 109, viz:

"To summarize: We hold (1) that as to wills of persons dying before and inter vivos trusts created prior to the effective date of the Principal and Income Act of 1945, a gift of income or net income included small stock dividends of 6% or less, unless the testator or settlor clearly expressed a contrary intent; and (2) it is especially clear that in the light of the facts and cir- cumstances which surrounded Mrs. Pew at the time she created the trust, she gave and intended to give to her grandson Arthur E. Pew, Jr., the life tenant of this trust, the small stock dividends of 6% or less, as well as the cash dividends which were paid annually, or as often as possible, to the owners of the common stock of the Sun Oil Company."

---

* The footnote at the end of that Opinion reads (page 78) : 'This statement applies to all receipts, including stock distributions of six (6%) per cent or less.' "

Regardless of the rationale of Pew, *the holding was that the stock dividends there at issue were income.* And Norvell Estate, 415 Pa. 427, 430, in footnote 5, cites this decision of Pew with approval.

The counsel in the instant case have indicated that a novel question is here presented, because of testator's direction "that all stock dividends . . . shall be treated as principal and not as income." However, this is not so. Actually, almost the same direction was present in Catherwood, namely: "All stock dividends declared upon any stock forming a part of the corpus of this trust and received by the Trustee hereunder during the continuation of the trust herein created shall be considered as principal and shall be added to the corpus of the said trust fund and distributed as part of the said corpus as hereinbefore provided and in no event shall such stock dividends be considered as income or distributed as such to the beneficiaries hereunder." Although no reference to this direction was made in the adjudication of the auditing judge, the opinion of the lower court, or any of the opinions of the Supreme Court in Catherwood, the Supreme Court decided that these small stock dividends should be awarded to the income beneficiaries in spite of settlor's clear and positive direction that "in no event shall such stock dividends be considered as income."

Great reliance was placed by the exceptant upon section 2 of the Principal and Income Act of 1947, which provides "that the person establishing the principal may himself direct the manner of ascertainment of income and principal . . . where not otherwise contrary to law." There is no merit to this position. The phrase "where not otherwise contrary to law" must be construed to mean that the creator of a trust cannot direct that income be retained as part of the principal for a period which transgresses the prohibition of the 1853 Act. If it does the direction is invalid.

This interpretation is confirmed by the comment of the Joint State Government Commission to section 6, subsection 8, of the Estates Act of 1947, dealing with apportionment between principal and income, viz:

"Clause (8) is added to make it certain that directions of this nature cannot be considered directions for invalid accumulations. This is particularly necessary in view of the language of section 2 of the Principal and Income Act of 1947, which merely refers to existing law. The inclusion of this paragraph made possible the repeal of the Act of 1939, P. L. 201, which only partially covered the subject . . ."

We should not confuse testator's right to direct that income be treated as principal in cases where the corpus of the trust will be distributed within the period permitted by the 1853 Act with those cases where the accumulations are directed for a prohibited period. If, for example, a trust is created for the life of the settlor only, his direction to treat income as principal, regardless of the form in which it is received, is valid. The present trust, however, is not such a one, but a trust established for a term which violates the statute against accumulations. Consequently, testator's direction in the instant case to treat stock dividends as principal is invalid as to stock dividends of six percent or less and they must be distributed to the income beneficiary.

McEldowney Estate, 415 Pa. 87, held that in a post-1945 trust two percent stock dividends were principal. This case is not applicable to the instant pre-1939 trust.

Finally, the amendment to section 5 of the Principal and Income Act, effective September 30, 1963, is not here applicable because it only applies to dividends accruing after its effective date. This amendment provides:

"Corporate distributions made to a trustee in the shares of the distributing corporation, however, described or designated by the distributing corporation, shall be deemed principal but if the number of shares of any class distributed to shareholders of such class is six percent (6%) or less of the number of shares of that class outstanding on the record date for such distribution, the shares so distributed shall be deemed income."

In reaching our conclusion in this case we are mindful that the entire problem of apportionment in Pennsylvania has for years been a chaotic nightmare.[4] The legislature has attempted to clarify and simplify the law and resolve the many problems which have continually arisen as a result of the inexorable pressure of the tax collector and the ingenuity of our skillful and experienced bar. We believe that our conclusion in this case is in line with public policy and that it is a practical, if not a technically perfect, solution of the question raised in the instant case. Moreover, we are well aware of the long acknowledged and well respected aphorism in apportionment law which was quoted in Pew, at page 109: ". . . life tenants who were the primary objects of testator's or settlor's bounty should not be forced to starve in order that future remaindermen might feast." We are also conscious of the fact that tax laws and modern means of capitalizing income have made the regular issuance of small stock dividends a common practice of many corporations. Therefore, the rule laid down in Catherwood and Pew that

---

[4] Since May 29, 1963, the date Pew was handed down, a large number of petitions for review of adjudications, which awarded all or a portion of stock dividends of six percent or less to principal, have been filed with this court. Moreover, we have been informed by counsel that many more such petitions for review will be filed with this court respecting adjudications handed down during the past five years.

stock dividends of six percent or less are income is a salutary one. Even testator's and settlor's intention must bend to it. In any event we are bound by the *decision* of the Supreme ·Court in Catherwood and Pew that these small stock dividends in this pre-1939 trust are income.

Accordingly, the exceptions are dismissed and the adjudication is confirmed absolutely.

### DISSENTING OPINION

BOLGER, J., June 11, 1965. — I dissent for the reason that the intent of testator was clearly expressed. He stated he wanted all stock dividends to remain in principal with no distinction between extraordinary dividends or those of six percent or less. It is, therefore, our duty to carry out that intention if legally possible: Brown Estate, 408 Pa. 214; Houston Estate, 414 Pa. 579.

Recent Pennsylvania appellate decisions abolishing the former Pennsylvania Rule of Apportionment of stock dividends and interpreting and applying the provisions of the several pertinent Principal and Income and Estates Acts cited in the majority opinion are confusing, but they clearly have one thing in common with the former Pennsylvania rule. They specifically emphasize two things: (1) The ancient and sacred rule that testator's wishes be executed when legal, and (2) that when testator has expressly or by clear implication directed the disposition of stock dividends irrespective of the character, either to income or to principal, such directions are legal. In Catherwood Estate, 405 Pa. 61, and Norvell Estate, 415 Pa. 427, the Principal and Income Act of 1945 was held to apply retroactively and all prior decisions to the contrary were flatly overruled, including Crawford Estate, 362 Pa. 458; Steele Estate, 377 Pa. 256. In Catherwood Estate, testator expressly provided that stock divi-

dends should remain principal. In Pew Trust, 411 Pa. 96, the testamentary intent that stock dividends should be income was upheld.

The statute against accumulations of 1853 and Maris' Estate, 301 Pa. 20, are irreconcilable to the present decisional and statute law and, therefore, Maris' Estate, supra, is no longer the law. "When a former decision is overruled, the reconsidered pronouncement will be considered as the law from the beginning: People ex rel. Rice vs. Graves et al., 273 N. Y. S. 582; affirmed in 270 N. Y. 498, 200 N. E. 288; certiorari denied 298 U. S. 683.": Philadelphia v. Schaller, 148 Pa. Superior Ct. 276, p. 280.

I dissent also because the law should be uniform in its application. The majority decision creates a vacuum in which the mere time periods involved operate on the same facts to provide different results at different periods all during the administration of the trust. To now hold, as do the majority, that testator's expressed direction that all stock dividends, excepting those of six percent or less, remain in principal further complicates the problem.