## Darlington Estate.

Argued November 19, 1968.   Before Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

*G. Harold Blaxter,* with him *Stephen E. Nash,* and *Blaxter, O'Neill, Houston & Nash,* for appellant.

*Robert L. Kirkpatrick,* with him *Thomas W. Pomeroy, Jr.,* and *Kirkpatrick, Pomeroy, Lockhart & Johnson,* for appellee.

*A. Evans Kephart,* for amicus curiae.

*Thomas N. Griggs,* and *Griggs, Moreland, Blair & Anderson,* for amicus curiae.

*Philip A. Brégy* and *Cuthbert H. Latta,* under Rule 65.

OPINION BY MR. JUSTICE ROBERTS, April 23, 1969:

In 1929, Harry Darlington created and funded a substantial inter vivos trust for the benefit of his wife, Ethel S. Darlington (now Ethel S. Garrett) for life. The instrument directs that the "entire net income" be paid to his wife and in addition provides "Stock dividends shall belong to the corpus of the trust and shall not be distributable as income." During the course of the administration of this trust, the trustee awarded to principal certain stock dividends he received. It is these decisions by the trustee to retain such dividends in principal, upheld in the Orphans' Court of Allegheny County by both the auditing judge and the court en banc, which is contested in this appeal taken by settlor's wife.

These stock dividends were received during three distinct periods, and for each one a separate discussion of the applicable law is necessary. First, there is the 100% stock dividend of Gulf Oil stock which was received in 1936, before any of the changes in the Act Against Accumulations (Act of 1853) were made. Second, there is the series of stock dividends of 6% or

less which was received between the effective date of the Principal and Income Act of 1947 (July 3, 1947) and that act's amendment which became effective September 30, 1963. Finally, a group of stock dividends of 6% or less were received after September 30, 1963. We will address ourselves to the proper treatment of each in the order set out above.

### 1936 100% Stock Dividend

In 1936, Gulf Oil Corporation declared a 100% stock dividend and as a result the trustee received 200 additional shares of its stock. If this stock dividend had been distributed at the time of its receipt, the trustee would have transferred 21.54 shares of this stock to the life tenant under the then prevailing Pennsylvania Rule of Apportionment. These 21.54 shares today are represented by 181.79 shares of Gulf Oil Corporation which the trustee has retained in principal as a result of the decree of the auditing judge of December 21, 1966. It is this adjudication by the orphans' court which appellant is contesting.

Appellant's argument is based on the fact that at the time this stock dividend was received by the trustee (1936) the law in this Commonwealth was that small stock dividends could not be applied to principal even if the settlor of the trust so directed. This doctrine had been established in *Maris's Estate*, 301 Pa. 20, 151 Atl. 577 (1930) where the settlor had provided that "all stock dividends consisting of shares of stock of the corporations issuing them shall be considered principal." This Court struck down that provision as a direction to accumulate income contrary to the express provisions of the Act of April 18, 1853, P. L. 503. The stated rationale was that "no one can be permitted to set aside the public policy of the State by the simple expedient of designating by another name

that which the courts have repeatedly decided to be income." *Maris's Estate*, 301 Pa. at 23, 151 Atl. at 578.

However, appellees argue and the lower court held that despite *Maris* the public policy of the Commonwealth had now changed and that therefore there was no present reason for the court to preclude the implementation of the settlor's intent to have stock dividends applied to principal. To support this contention they point to the Act of May 25, 1939, P. L. 201, 20 P.S. §301.6 historical note, which permitted an accumulation of *extraordinary* stock dividends, The Principal and Income Act of 1947, Act of July 3, 1947, P. L. 1283, 20 P.S. §3470.1, which vested in the settlor the power to designate the stock dividend as either income or principal, and the 1956 amendment to the Estates Act of 1947, Act of February 17, 1956, P. L. (1955) 1073, 20 P.S. §301.6, which permitted income accumulations for the perpetuities period.

While this argument may appear persuasive at first reading, the flaw in the reasoning becomes obvious on further reflection. The problem is that the same statutes on which the appellees and the court below rely to establish a change in public policy (and which in fact reflect such a change), also make it clear that these changes in Commonwealth policy were not intended to apply to the receipt of this 1936 dividend. The Act of 1939 by its terms applies only to trusts created *after* 1939, the Principal and Income Act of 1947 applies only to receipts *after* July 3, 1947, and the Act of 1956 applies only to trusts created *after* its enactment. Therefore, if this Court were to hold that the 1936 dividend should be treated as coming within the change of public policy established by the Legislature after *Maris*, we would be giving effect to only that part of the legislation which supports appellees' position while ignoring the Legislature's man-

dates as to effective dates of the application of these policies. This we cannot do. The public policy of this Commonwealth includes not only the post-*Maris* substantive changes in the law, but also the Legislature's choices as to when these policies should become operative. We must be guided by the Legislature's decision.

In addition, if we were to adopt the position urged by the appellees, another legislative policy would be defeated. It is clear that the Legislature has determined that *date of receipt* should be the crucial factor in deciding when a new principal and income rule should be effective. Thus the Principal and Income Act of 1947 provided "That the provisions of this act shall *not* apply to receipts and expenses received or paid *prior* to the effective date of this act." (Emphasis supplied.) When this act was amended in 1963, operation of its new provisions was limited to trust receipts after the effective date of amendment (September 30, 1963). Act of August 1, 1963, P. L. 442, §3. If this Court were to decide that the policy of the 1947 Act should apply to receipts prior to July 3, 1947 (despite the clear language to the contrary), we would not only destroy the symmetry of the system the Legislature has established, but also would call into the question the need to follow the stated effective date of the 1963 amendment. If the 1947 Act can apply to receipts before 1947, why should not the 1963 Act apply to receipts before 1963, and even before 1947? Such a result would bring chaos into an area where it is especially essential and highly desirable that the rules of law be clear, definite and certain.

Therefore, we hold that as to all stock dividends received by a trust prior to July 3, 1947, the principles of *Maris* still apply (except as noted in the margin).*

---

* *Maris* does not apply to extraordinary corporate dividends received by a post-1939 trust before the effective date of the Prin-

This determination in no way narrows our holding in *Catherwood Trust*, 405 Pa. 61, 173 A. 2d 86 (1961), *Norvell Estate*, 415 Pa. 427, 203 A. 2d 538 (1964), and *Arrott Estate*, 421 Pa. 275, 217 A. 2d 741 (1966), that the provisions of the Principal and Income Act of 1947 apply to *all* trusts no matter when they were created. It is only the dividends *received* prior to the Principal and Income Act which are governed by the prior law.

It follows, therefore, that the orphans' court erred in treating the 100% stock dividend received in 1936 as belonging entirely to principal. Hence that portion of the total stock dividend improperly retained as principal (181.79 shares) will be awarded to the income beneficiary.

## Small Stock Dividends Received Between 1948 and September 30, 1963

In the court below, the appellant contended that despite the settlor's specific direction that these dividends be applied to principal, they should be distributed to income in accordance with this Court's decision in *Pew Trust*, 411 Pa. 96, 191 A. 2d 399 (1963) and the Statute Against Accumulations, Act of April 18, 1853, P. L. 503, §9, 20 P.S. §301.2 historical note. However, since that time this Court decided *Hallowell Trust*, 432 Pa. 184, 246 A. 2d 684 (1968). In that case the exact same argument was made by the income bene-

---

cipal and Income Act of 1947. These may be accumulated if the settlor so directs. Act of May 25, 1939, P. L. 201, 20 P.S. §301.2 historical note.

Receipts between May 3, 1945 and July 3, 1947 are governed by the now repealed Uniform Principal and Income Act of 1945, Act of May 3, 1945, P. L. 416. While this opinion for simplicity's sake often refers to the effective date of the current (1947) Act it should be realized that similar principles are applicable under the 1945 Act.

ficiary; however, this Court found such a contention without merit. We concluded that if the Legislature deemed small stock dividends to be principal under the Principal and Income Act of 1947, Act of July 3, 1947, P. L. 1283, §5, then "It requires no citation of authority to establish that the Act Against Accumulations . . . does not strike down accumulations of 'principal' . . . ." In view of our decision in *Hallowell* appellant has not sought to reargue the proposition established in that case. The court below correctly concluded that settlor's specific direction as well as the Principal and Income Act require that these stock dividends be allocated to principal.

### Small Stock Dividends Received After September 30, 1963

Finally, appellant contends that the dividends received after September 30, 1963 must be considered income notwithstanding the settlor's contrary expression of intent. In support of this proposition our attention is directed to the amendment to section 5 of the Principal and Income Act of 1947 which became effective on September 30, 1963. This is the amendment which changed the treatment of stock dividends of 6% or less. It provides "Corporate distributions made to a trustee in the shares of the distributing corporation, however described or designated by the distributing corporation, shall be deemed principal but if the number of shares of any class distributed to the shareholders of such class is six percent (6%) or less of the number of shares of that class outstanding on the record date for such distribution, the shares so distributed shall be deemed income." Before this enactment *all* stock dividends were "deemed principal" under the act. From this amendment, appellant argues that the

Legislature has the absolute right to change the substantive law as to what shall be considered income and what shall be considered principal; that such a change has been made by the 1963 amendment; and that all small stock dividends must be apportioned to income as a matter of law no matter what contrary intent is expressed by the settlor.

Such an argument is reminiscent of the rigidity with which the rules of apportionment were viewed at the time of the decision in *Maris*, supra. However, in light of the intricacies of modern corporate finance and the complexities of corporate dividend policies, accounting practices and tax considerations, it is clear that the *Maris* and pre-*Maris* rules of apportionment are no longer relevant to current trust concepts. See *Norvell*, supra. No such hard and fast rules are intended to be applied today. Appellant's argument completely ignores the fact that the rules of section 5 (either in its 1947 *or* 1963 version) were intended to be applied *only* when a contrary intent was *not* expressed by the settlor. Section 2 of the Principal and Income Act of 1947 has *always* provided "This act shall govern the ascertainment of income and principal . . . Provided, That the person establishing the principal may himself direct the manner of ascertainment of income and principal . . . and such provision where not otherwise contrary to law, shall control, notwithstanding this act." 20 P.S. §3470.2. Thus the purpose of the Legislature in enacting section 5 was much less ambitious than appellant's argument would seem to indicate. The only purpose of the rules in section 5 "is to provide convenient and workable rules of administration of estates in conformity with what would be the wishes of most settlors . . . . The rules stated are applicable in the absence of the expression of a contrary intention by the settlor." Scott, Trusts §241A,

at 2101-02 (3d ed. 1967). Further, our cases have recognized the paramount importance of giving effect to the settlor's intent under the Principal and Income Act. See, e.g., *Dunham Trust*, 433 Pa. 273, 249 A. 2d 531 (1969) ; *Pew Trust*, 411 Pa. 96, 109, 191 A. 2d 399, 406 (1963).

But appellant would have us hold that by the 1963 amendment to the Act of 1947, the law of *Maris's Estate* was somehow revived as to receipts *after* September 30, 1963. This is argued despite the fact that no change was made in section 2 of the act, the section by which the Legislature made it clear that settlor's intent is controlling. We find this entire line of reasoning particularly unpersuasive in light of the limited role the amendment to section 5 was intended to play, when and only when the settlor failed to clearly express his own intent as to allocation. The legal effect of settlor's section 2 expressed intention remains the same after the 1963 section 5 amendment as it was prior thereto.

Appellant's final argument as to the post-1963 dividends involves the language "where not otherwise contrary to law" in section 2 of the Principal and Income Act of 1947. Her claim is that the Act of April 18, 1853, P. L. 503, §9, 20 P.S. §301.2 historical note, although repealed as to trusts created after 1956, still prohibits the accumulation of stock dividends as to this trust which was created in 1929, and that it is section 9 to which "where not otherwise contrary to law" refers. However, appellant has overlooked one important point. These post-1963 receipts clearly come within the terms of the Principal and Income Act of 1947, §15; this same act in section 14 provides "all other acts or parts of acts which are inconsistent with the provisions of this act are hereby repealed absolutely." Therefore, if section 9 of the Act of 1853 is in-

consistent with section 2's blanket permission for the settlor to express his own intent, it is the Act of 1853's provision which must fail.

We conclude that as to the stock dividend (100% Gulf Oil) *received* by the trust *prior* to the effective date of the Principal and Income Act of 1947, the rules of *Maris's Estate* continue to control, notwithstanding a contrary intent by the settlor. We reaffirm our holding in *Hallowell* that as to stock dividends received by a trust between the effective date of the Principal and Income Act of 1947 and the effective date of its amendment in 1963, the settlor's intent shall control and in the absence of such intent *all* stock dividends shall be apportioned to principal. Last, we conclude that as to small stock dividends (6% or less) received by a trust after the effective date of the 1963 amendment to the Principal and Income Act, the settlor's intent shall control, and in the absence of such intent the small stock dividends shall be apportioned to income.

Therefore the decree of the court below is modified as to the 1936 Gulf Oil Corporation dividend in order to award 181.79 shares to the income beneficiary. As so modified, the decree of distribution is affirmed in all other respects. Each party to pay own costs.

Mr. Chief Justice Bell took no part in the consideration or decision of this case.