377 A.2d 157

ESTATE of Sidney F. TYLER, Settlor.

**Appeal of Harry F. WEST, Executor of the Estate of Molly Tyler West, Deceased.**

Supreme Court of Pennsylvania.

Argued Jan. 11, 1977.

Decided Aug. 26, 1977.

John L. Harrison, Jr., Philadelphia, for appellant.

Arthur M. Cooper, Asst. Atty. Gen., for appellee, Commonwealth of Pennsylvania as Parens Patriae for Charities.

Duane, Morris & Heckscher, Maurice Heckscher, William S. Ayres, Philadelphia, for appellee, The Fidelity Bank.

Philip A. Bregy, Philadelphia, for appellee, Philip A. Bregy, Esq., Guardian & Trustee ad Litem.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

POMEROY, Justice.

At issue in this appeal is the proper distribution as between income and principal of certain small stock dividends received during the period May 3, 1945 through September 30, 1963 by the trustee of an inter vivos trust created by Sidney F. Tyler in 1919. The Court of Common Pleas of Philadelphia County, Orphans' Court Division, followed our decision in *Tyler Trusts*, 447 Pa. 40, 289 A.2d 441 (1972), and held such small stock dividends to be allocable to principal.[1] The executor of the estate of a deceased income beneficiary has appealed, relying on this Court's decision in *Pew Trust*, 411 Pa. 96, 191 A.2d 399 (1963).[2] We thus have before us the relationship between our decisions in *Tyler Trusts, supra,* and in *Pew Trust, supra.*

## I.

Much, perhaps too much, has already been written of the historical events which gave rise to the controversy typified

1. *Tyler Trust*, 73 Pa.D. & C.2d 5, 1976 Fid.Rep. 313 (C. P. Phila. Cnty. 1975).

2. This appeal comes directly to this Court under Section 202(3) of the Appellate Court Jurisdiction Act of 1970, P.L. 673, No. 223, art. II, 17 P.S. § 211.202(3) (Supp. 1977–78).

150

by this appeal.[3] No more than a brief summary is therefore in order:

Prior to May 3, 1945, allocation of trust receipts in the form of stock dividends as between principal and income was accomplished through application of what was known as the "Pennsylvania Rule." Where the trust received an "extraordinary" stock dividend, it was incumbent upon the trustee to determine what portion of that dividend represented a distribution of current earnings of the issuing corporation (and hence was allocable to income) and what portion represented a distribution or dilution of the capital of the corporation (and hence should be allocated to principal to avoid diminution of the trust corpus.)[4] While this task of allocation involved no little difficulty, given the increasing complexity of corporate economics and structure in the first half of this century, the Pennsylvania apportionment rule was never applied to stock dividends which constituted less than 6% of the number of shares outstanding of the class of stock being distributed. Such stock dividends were deemed "ordinary" and, absent a contrary direction of the trust settlor,[5] were always classified as income distributable to the income beneficiary.

3. A complete historical account can be obtained by reading the following cases: *Tyler Trust,* 447 Pa. 40, 289 A.2d 441 (1972); *Darlington Trust,* 434 Pa. 198, 252 A.2d 611 (1969); *Hallowell Trust,* 432 Pa. 184, 246 A.2d 684 (1968); *Pew Trust,* 411 Pa. 96, 191 A.2d 399 (1963); *Catherwood Trust,* 405 Pa. 61, 173 A.2d 86 (1961); *Crawford Estate,* 362 Pa. 458, 67 A.2d 124 (1949); *Pew Trust,* 362 Pa. 468, 67 A.2d 129 (1949).

4. As to the apportionment of stock dividends prior to 1945 see *Flinn's Estate,* 320 Pa. 15, 181 A. 492 (1935); *Earp's Appeal,* 28 Pa. 368 (1857). See also Brigham, *Pennsylvania Rules Governing the Allocation of Receipts Derived by Transferees from Shares of Stock,* 85 U.Pa.L.Rev. 358 (1937).

5. Prior to the enactment of the Uniform Principal and Income Act of 1945, any attempt by the settlor to direct that small stock dividends (6% or under) be accumulated as principal after the death of the settlor was violative of the Act of April 18, 1853, P.L. 503, § 9. See *Maris' Estate,* 301 Pa. 20, 151 A. 577 (1930).

In 1945 the Legislature enacted the Uniform Principal and Income Act[6] which, among other things, legislatively decreed that these "ordinary" stock dividends of less than 6% be classified as principal, but which at the same time recognized a power in the settlor to "himself direct the manner of ascertainment of income and principal . . . ."[7] This statute was initially held to be unconstitutional insofar as it purported to apply to trusts created prior to its effective date, May 3, 1945,[8] a position which we reversed in 1961.[9]

There then arose the question presented here: what should be done with the "ordinary" stock dividends received by trusts created prior to 1945 to which the Principal and Income Act now constitutionally applied and which under that Act were legislatively declared to be principal, absent a direction by the settlor that they be classified as income?

When this Court first addressed that question in *Pew Trust*, 411 Pa. 96, 191 A.2d 399 (1963), the majority summarized its holding as follows:

"We hold (1) that as to wills of persons dying before and inter vivos trusts created prior to the effective date of the

6.  Uniform Principal and Income Act of 1945, Act of May 3, 1945, P.L. 416, § 1 *et seq.*, formerly 20 P.S. §§ 3471–3485. That Act was repealed but substantially reenacted by the Principal and Income Act of 1947, Act of July 3, 1947, P.L. 1283, § 1 *et seq.*, formerly 20 P.S. §§ 3470.1–3470.15.

Because the Act of 1945 was in effect from May 3, 1945 until July 3, 1947 and the Act of 1947, substantially the same Act, was in effect thereafter, the starting date for the question presented by this appeal is May 3, 1945.

The Principal and Income Act of 1947 was amended once (Act of Aug. 1, 1963, P.L. 442) and then repealed by the new Probate, Estates and Fiduciaries Code, Act of June 30, 1972, § 3, 20 Pa.C.S.A., vol. 4, p. 157. The new Code, however, contains provisions which replace the Principal and Income Act of 1947. See 20 Pa.C.S.A. §§ 8101–8112.

7.  Section 2 of the Uniform Principal and Income Act of 1945, formerly 20 P.S. § 3472.

8.  *Crawford Estate*, 302 Pa. 458, 67 A.2d 124 (1949); *Pew Trust*, 362 Pa. 468, 67 A.2d 129 (1949).

9.  *Catherwood Trust*, 405 Pa. 61, 173 A.2d 86 (1961). The Court made its holding in *Catherwood* applicable to distributions in "all audits now pending and henceforth." 405 Pa. at 78, 173 A.2d at 94.

Principal and Income Act of 1945, *a gift of income or net income included small stock dividends of 6% or less,* unless the testator or settlor clearly expressed a contrary intent; and (2) it is especially clear that in the light of the facts and circumstances which surrounded Mrs. Pew at the time she created the trust, she gave and intended to give to her grandson Arthur E. Pew, Jr., the life tenant of this trust, the small stock dividends of 6% or less, as well as the cash dividends which were paid annually, or as often as possible, to the owners of the common stock of the Sun Oil Company." (Emphasis supplied.) 411 Pa. at 109–110, 191 A.2d at 406.

The first part of this holding in *Pew Trust,* not surprisingly, drew dissents in this Court [10] and was a cause of some confusion among trial judges and members of the bar: if the Uniform Principal and Income Act was, as this Court held in 1961, constitutional if applied to trusts created prior to 1945 and if that Act declared, as it did, that small stock dividends were principal absent a contrary direction by the settlor himself, how then could this Court hold in *Pew Trust* that such dividends were income absent a "clearly expressed . . . contrary intent" by the settlor?

Nearly ten years later the question of the proper treatment of small dividends in pre-1945 trusts was again presented to us in *Tyler Trusts,* 447 Pa. 40, 289 A.2d 441 (1972). In a plurality opinion (two members of the Court concurring in the result, two not participating) the holding of *Pew Trust* was limited as follows:

"[W]e shall set things straight by simply limiting hereafter the force of *Pew* as a precedent to its alternative holding as summarized in the second-from-last paragraph of the opinion of the Court. . . .

**10.** The opinion in *Pew Trust* was written by then Chief Justice Bell, who had dissented from that part of the decision in *Catherwood Trust* which held that the Principal and Income Act could constitutionally be applied to pre-1945 settled trusts. Mr. Justice (later Chief Justice) Benjamin R. Jones, the author of *Catherwood,* and Mr. Justice Cohen filed dissenting opinions in *Pew Trust.*

Thus, up until September 30, 1963, the law should have been, and is now, that . . . after 1945, both ordinary and extraordinary stock dividends are allocated to principal in the absence of a contrary direction by the settlor." (Footnote omitted; citations omitted.) 447 Pa. at 50, 51, 289 A.2d at 448.[11]

██ The appellant income beneficiary argues that the above-language from *Tyler Trusts* is *dictum* ; he points out correctly that the trusts before this Court in that case contained explicit provisions in which the settlor [12] had directed that ordinary stock dividends be classified as principal and that there was therefore no need in *Tyler Trust* to deal with the question of how ordinary stock dividends should be classified absent such specific direction. The appellee guardian and trustee *ad litem* for the remainderman makes a cogent argument in reply that the above language was not *dictum*. We need not, however, resolve this dispute, for in the case at bar the point is clearly decisional, and we elect to and do follow the above-quoted language of *Tyler Trusts*, and declare that the first holding of *Pew Trust* is overruled. We do not, however, disapprove the second holding of *Pew Trust* that where it is "especially clear that in the light of the facts and circumstances which surrounded [a settlor] at the time [he or she] created a trust" that the settlor intended that small stock dividends be classified as income rather than principal, then such stock dividends will be regarded as income. The Uniform Principal and Income Act has always recognized a power in the settlor to classify as he will, and the second holding of *Pew Trust* simply does the same thing.

11. The General Assembly in 1963 effectively codified the result in *Pew Trust* with respect to small stock dividends received after 1963. See the Act of Aug. 1, 1963, P.L. 442, amending former 20 P.S. § 3470.5(1) effective September 30, 1963. Hence the reference in *Tyler Trusts*, quoted in the text above, to that date. See 447 Pa. at 51, 289 A.2d 441. See also *Norvell Estate*, 415 Pa. 427, 430, n.5, 203 A.2d 538 (1964).

12. The settlor in this case, Sidney F. Tyler, was also the settlor of the trusts involved in *Tyler Trusts*, 447 Pa. 40, 289 A.2d 441 (1972).

## II.

■    We come to the facts of this case.  All agree that the trust of Sidney F. Tyler created October 7, 1919 does not contain a direction to the trustee to classify ordinary stock dividends (less than 6%) as income rather than as principal. The instrument is entirely silent on that point.  Nor are we able to find any language in the trust itself which might indicate such an intention on the part of the settlor.

Appellant offered into evidence in the lower court certain other trust instruments created by Sidney F. Tyler [13] in which a specific direction is made to classify all stock dividends (ordinary and extraordinary) as principal.  Appellant's argument is that the insertion of such explicit provisions in two other instruments proves that Mr. Tyler, by not inserting such a provision in the instrument now before us, intended that small stock dividends be classified as income. The auditing judge at first sustained an objection to the introduction of these other trust instruments but then in his adjudication considered their evidentiary value and declared that the inference he was asked to draw therefrom was "pure conjecture."  A five-judge court en banc agreed with this conclusion.

It is not necessary to view as pure conjecture appellant's argument based on the directions contained in these other trusts relative to small stock dividends in order to conclude that the evidentiary value of the other documents is not so strong as to justify our disregarding what amounts to a factual finding by the court below.  This case is unlike *Pew Trust* where, according to the majority opinion, the corpus of the trust was funded with common stock on which there was regularly paid an ordinary stock dividend of less than 6%.  If it were not the intention of the settlor of the *Pew* trust to give these small stock dividends to the income beneficiary, then the benefits afforded by the trust to that beneficiary would have been entirely illusory.  Here, however, the trust was funded originally with 2,500 shares of

---

13.  One of the trusts was created in 1917, two years before the instant trust;  the other was created in 1933.

preferred stock with respect to which no small stock dividends were ever paid. While appellant's argument based on the other trusts created by Sidney F. Tyler is a reasonable one, it falls short of making it "especially clear" (see the alternate holding in *Pew Trust, supra*) that the settlor intended a different treatment of the ordinary dividends in the trust now before us than that ordained by the Act.

The decree is affirmed; each party to bear own costs.

EAGEN, C. J., and ROBERTS, J., concur in the result.

JONES, former C. J., did not participate in the consideration or decision of this case.