## Hallowell Trust.

Argued May 2, 1967. Before BELL, C. J., MUSMANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*Philip A. Bregy,* with him *MacCoy, Evans & Lewis,* and *Duane, Morris & Heckscher,* for appellant.

186

*H. Ober Hess,* with him *Benjamin R. Neilson,* and *Ballard, Spahr, Andrews & Ingersoll,* for appellee.

*A. Evans Kephart,* amicus curiae, in propria persona, filed a brief.

*Robert L. Kirkpatrick,* and *Austin W. Scott,* of the Massachusetts Bar, and *Kirkpatrick, Pomeroy, Lockhart & Johnson,* filed a brief for amicus curiae.

*Cuthbert H. Latta,* amicus curiae, in propria persona, filed a brief.

OPINION BY MR. JUSTICE JONES, October 3, 1968:

An inter vivos trust was created in 1935 by H. T. Hallowell (settlor) by transferring to his son, H. T. Hallowell, Jr., as trustee, 1,000 shares of Standard Pressed Steel Company common stock. In the trust agreement, the settlor directed that: the trustee "shall hold the said shares of stock and any stock dividends paid thereon intact";[1] the net income to be paid to settlor's wife during her life; upon the life tenant's death, one-half of the trust fund be distributed to settlor's son[2] and the other one-half be held in trust for settlor's daughter. Settlor died in 1955. Upon the life tenant's death in 1966, the trustee filed his account and, upon the filing of that account, the instant controversy arose.

In the years 1955 through 1961—that is, subsequent to settlor's death and during the life tenant's lifetime—

---

[1] This provision of the trust agreement clearly expresses settlor's intent that *all* stock dividends be treated as principal and not as income.

[2] The son has since assigned portions of his remainder interest so that half of the remainder interest is now owned by Hallowell Foundation (5.85%), Swarthmore College (21.76%) and the balance by the son.

the trustee received certain dividends from Standard Pressed Steel Company which dividends were paid in common stock of said company, were of the same class and were all at the rate of 6% or less when paid. Upon receipt of such stock dividends, the trustee, *acting in accordance with settlor's direction in the trust instrument,* allocated such dividends *to principal.* Those dividends, totalling 24,684.83 shares, had a market value at the time of the life tenant's death of $433,-527.33. The instant controversy, between the life tenant's estate and the settlor's son and daughter, remaindermen under the trust, arises over the allocation of these dividends. The life tenant's estate contends it is entitled to such dividends *as income* by reason of the operation of the Statute Against Accumulations,[3] and our decision in *Pew Trust,* 411 Pa. 96, 191 A. 2d 399 (1963), despite the settlor's expressed direction such dividends be treated *as principal;* the trust remaindermen contend neither *Pew* nor the Statute Against Accumulations, supra, proscribes the treatment of such dividends *as principal* while the clearly expressed intent of the settlor and the provisions of the Principal and Income Act of July 3, 1947 (P. L. 1283, §5, 20 P.S. §3470.5) dictate that such dividends be deemed principal.[4]

The Orphans' Court of Montgomery County decided the stock dividends should be treated as income and not principal and awarded the dividends to the life

---

[3] Act of April 18, 1853, P. L. 503, §9, 20 P.S. §301.2 (Historical Note). Later statutes on the same subject (Act of May 25, 1939, P. L. 201, 20 P.S. §301.6 (Historical Note); Estates Act of 1947, P. L. 100, §6, 20 P.S. 301.1 et seq.; Estates Act Amendment of 1956, P. L. 1073, 20 P.S. §301.6), being applicable only to "conveyances" which take place subsequent to the passage of the respective statutes, are not applicable to this 1935 trust.

[4] If the life tenant's estate is correct in its contention, death taxes in that estate would be increased by about $200,000.00.

tenant's estate. The court's opinion summarizes its reasons: "(1) the Principal and Income Act does not apply to stock dividends of six per cent or less; (2) stock dividends of six per cent or less are income, except that the testator or settlor may direct to the contrary *if such direction is valid otherwise;*[5] (3) a direction to accumulate stock dividends of six per cent or less is not valid if and when it violates the Act of 1853."[6] We believe that such decree is erroneous and must be reversed.

Certain facts are undisputed: (a) this trust antedated the 1945 and the 1947 Principal and Income Acts; (b) the dividends involved are at the rate of six per cent or less, payable in stock of the same class of the same company; (c) *all* the dividends were received at times when the 1947, i.e., the *second,* Principal and Income Act[7] was in effect; (d) that statute declared that "*All* dividends on shares of a corporation forming a part of the principal which are payable in the shares of the corporation itself of the same kind and rank as the shares on which such dividend is paid *shall be deemed principal.*"[8] (Emphasis supplied); (e) the settlor clearly and unequivocally expressed his intent that *all* stock dividends—large or small, ordinary or extraordinary—of Standard Pressed Steel Company be treated as principal and not income. The result reached by the court below ignores the settlor's

---

[5] Emphasis supplied.

[6] The decree of the court below is based upon the Statute Against Accumulations, its interpretation of *Pew, Maris Estate,* 301 Pa. 20, 151 A. 577 (1930) and *McIlhenny Estate,* 15 Fid. Rep. 367 (1965).

[7] Act of July 31, 1947, P. L. 1283, §5, 20 P.S. §3470.5.

[8] The Act of August 1, 1963, P. L. 442, 20 P.S. 3470.5, which amended the 1947 Principal and Income Act to provide that stock dividends of six per cent or less received thereafter be deemed income, concededly is inapplicable in the case at bar.

clear direction and intent and the explicit language of the 1947 statute; it would overrule, in large measure, the rationale of our recent decisions in *Catherwood Trust*, 405 Pa. 61, 173 A. 2d 86 (1961), *McEldowney Estate*, 415 Pa. 87, 202 A. 2d 100 (1964), *Norvell Estate*, 415 Pa. 427, 203 A. 2d 538 (1964), cert. denied, 380 U.S. 913, 85 S. Ct. 900 (1965), *Reznor Estate*, 419 Pa. 188, 213 A. 2d 791 (1965) and *Arrott Estate*, 421 Pa. 275, 217 A. 2d 741 (1966) and would create in this area of the law the confusion and chaos which we have studiously endeavored to avoid.

The "rules in regard to allocation [of stock dividends] were devised to achieve a fair apportionment between beneficiaries and remaindermen, *for the purpose of carrying out the putative intent of the settlor of the trust*" and these "same rules should not be used where the settlor's intent has been expressed with sufficient clarity, and where the question is *whether the settlor's expressed intent is to be defeated.*" See: 44 Cornell Quarterly 284, 290 (1959).

It was the theory of the court below that *all* small stock dividends, i.e., at the rate of six per cent or less, whether received *prior to* the passage of the 1945 and 1947 Principal and Income statutes when the so-called Pennsylvania Rule of Apportionment prevailed *or subsequent to* the passage of and during the time when the 1945 and 1947 Principal and Income statutes were in effect, *must* be considered income not principal, and that, despite what these statutes declare and, even though the settlor *has clearly expressed his intent* such dividends be considered principal and not income, the Act Against Accumulations strikes down the settlor's intent because such intent contravenes the public policy expressed in the accumulations statute. Both premises, in our opinion, are erroneous.

With certain inapplicable exceptions, the Act Against Accumulations strikes down the accumulation

of "rents, issues, interest or profits" and, although not specifically mentioned or stated in the statute, the statutory phraseology embraces "income". See: *Catherwood Trust,* supra, at p. 68. However, unless an item is "income", an accumulation thereof is neither illegal nor unlawful. In this posture, we must, therefore, initially, determine whether, *when these dividends were received,* such dividends were deemed income or principal in deciding what, *if any,* impact the accumulations statute had on these dividend distributions. In *Maris Estate,* supra (1930), the testator, providing for the division of his residuary estate into three parts upon the life tenant's death, stated that "all stock dividends consisting of shares of stock of the corporation issuing them shall be considered as principal." This Court, concluding that such a testamentary provision did violate the Act Against Accumulations, supra, stated: "No one can be permitted to set aside the public policy of the State by the simple expedient of designating by another name that which the courts have repeatedly decided to be income" (p. 23). However, the *Maris* Court clearly indicated that its ruling was dictated by the fact that, *at that time,* the Pennsylvania Rule of Apportionment (now abolished by *Catherwood*) was in effect. Illustrative that such apportionment rule motivated the result is the following language from *Maris* (pp. 24, 25): "This provision, so far as the items now in controversy are concerned, runs counter to *our established rule of property* that such dividends, earned after the death of the testator, which do not decrease the intact value of the stock as of that date, are income,—*a rule* that cannot be avoided, as presently attempted, by, under a testamentary direction, treating dividends which would otherwise be considered income, as principal, if, as here, the result of that course is to im-

pinge on the act against accumulations. This being the case, despite testator's direction that all stock dividends shall be considered as principal, those here involved remain income; and, since this income is in effect ordered to be unlawfully accumulated, it becomes presently distributable. The law was correctly so held, under somewhat similar circumstances, in Wentz's Est., 12 Pa. D. & C. 398, which seems to be the only reported Pennsylvania ruling directly approaching the precise point now before us." (Emphasis supplied).

In reaching our conclusion in this matter *Maris* need not be overruled because since the decision in *Maris* the law has been changed by a legislative definition *as principal* of "all dividends".[9] The legislative change in the definition of "principal" renders *Maris* presently inapposite.

Prior to the period wherein the instant small dividends were received the legislature had seen fit to classify such dividends, whether received in a pre-1947 or post-1947 trust, as "principal" and not "income". The power and authority of the legislature to change the definition of dividends from "income" to "principal" is beyond question. See: *McEldowney,* supra, *Norvell,* supra, *Reznor,* supra, and *Arrott,* supra. In *Norvell,* supra, Mr. Justice ROBERTS, speaking for this Court, said (pp. 433, 434, 435) : "We are therefore led to the question whether the Legislature possesses con-

---

[9] In *Equitable Trust Co. v. Prentice,* 250 N.Y. 1, 164 N.E. 723 (1928) substantially the same issue presented in *Maris* was presented to the New York Court of Appeals, a Court which up to that time and for sometime thereafter followed the so-called Pennsylvania Rule of Apportionment. Chief Judge (later Mr. Justice) CARDOZO, speaking for a unanimous Court, held the discretion given to a trustee to allocate stock dividends to capital should prevail and that an allocation to capital under such circumstances was not an unlawful accumulation. See also: *Matter of Heinrich,* 90 N.Y.S. 2d 875 (1949) and *Matter of Talbot,* 9 N.Y.S. 2d 805 (1939).

stitutional authority to define income. This determination, in turn, depends on whether income, as used in the statute, enjoys such a fixed definitional status that it may not be legislatively disturbed. In Catherwood we attributed to trust income no such undisturbable status.

. . .

"We have no hesitancy in concluding that the Legislature has the power to define income.[10] In the light of the complexity of current corporate finance, the definition of income is a function which the Legislature is well suited to perform. 'In the area of apportionment of stock distribution between income and corpus beneficiaries, the elements of fairness, practicality and changing conditions dictate that freedom be given to lawmaking bodies to promulgate rules applicable to existing trusts. [citing authority]. . . .' "

Acting within the scope of its power and authority, the legislature designated small stock dividends as "principal", not "income", and, in so doing, it changed the so-called Pennsylvania Rule of Apportionment which was in effect when *Maris* was decided and upon which the *Maris* ruling was bottomed. It requires no citation of authority to establish that the Act Against Accumulations, supra, does not strike down accumulations of "principal" and these small stock dividends, by legislative fiat, deemed *"principal at the time they were received"*, could not be struck down by the Act Against Accumulations, supra.

Under *Catherwood* and *Pew,* stock dividends, up to and including six per cent, were considered not ap-

---

[10] It is common experience that "income" is a term which is, and always has been defined differently for various purposes by governmental agencies, regulatory bodies, taxing authorities, legislators, accountants, securities analysts, bankers, financial writers, lawyers and laymen.

portionable and were treated as income *until the time of passage of the Principal and Income Acts of 1945 and 1947*, mandating that *all* dividends be deemed to be "principal", which completely changed the status and character of such dividends. The eminent Professor Austin W. Scott well states: "The Pennsylvania legislature was not satisfied with the decision in Maris's Estate. By the Act of May 25, 1939, P. L. 201, it is provided that in trusts becoming effective thereafter provisions directing that extraordinary dividends in stock or cash should be treated, in whole or in part, either as principal or income, should be valid and enforceable. Thereafter the Estates Act of 1947, §6, was amended to provide that a direction or authorization to apply to principal in whole or in part extraordinary dividends should be valid. The doctrine of the Maris case was repudiated by the legislature, at least as to trusts thereafter created.

. . .

"It would seem clear that to reaffirm and apply to small stock dividends the doctrine of Maris's Estate would be out of keeping with the public policy of today, both in Pennsylvania and in other states. The whole situation is much changed since the decision of that case. The beneficiaries of a trust have no vested interest in the old rules of law. It would be unwise to make the legality of a direction by the settlor to allocate to principal what would otherwise be presumed to be income depend upon the time of the creation of the trusts, whether before 1939, before 1945 or 1947, before 1956, before 1963, or thereafter. Any such distinction as to the time of creating the trust would involve much trouble for future decisions."[11]

The basic error in the ruling of the court below lies in its refusal to recognize and heed the legislative

---

[11] See: Brief of amicus curiae (*Darlington Estate*) pp. 10-12.

direction that, during the period in which the instant dividends were received, such dividends were deemed "principal" and not "income". The court below held, in effect, that, no matter what the legislature may direct such small dividends to be deemed, whether principal or income, and no matter when such dividends were received, such small stock dividends must always be considered "income". Such a position denies the right of the legislature to define that which is "income" and that which is "principal", a denial in direct conflict with the decisions of our Court in *McEldowney, Norvell* and *Arrott.*

We disagree with the interpretation placed by the court below on *Pew* that all small stock dividends, regardless of when received and regardless of what the legislature has declared such small stock dividends to be deemed during the period of receipt of such dividends, must be classed as income. *Pew* does not stand for this proposition.

In *Pew,* Chief Justice BELL stated: "To summarize: We hold (1) that as to wills of persons dying before and inter vivos trusts created prior to the effective date of the Principal and Income Act of 1945, a gift of income or net income included small stock dividends of 6% or less, *unless the testator or settlor clearly expressed a contrary intent*; and (2) it is especially clear that in the light of the facts and circumstances which surrounded Mrs. Pew at the time she created the trust, she gave and intended to give to her grandson Arthur E. Pew, Jr., the life tenant of this trust, the small stock dividends which were paid annually, or as often as possible, to the owners of the common stock of the Sun Oil Company." (Emphasis supplied) (411 Pa. at 109-110).

Time and again, this Court has stated that, unless in violation of public policy or the law, the intent of a settlor *must* prevail. For the reasons stated above,

the Act Against Accumulations, supra,—the *only* statute or expression of public policy which, it is urged, renders settlor's expressed intent invalid—is without present application. Under *Pew,* in trusts created prior to the effective date of the Principal and Income Act of 1945, small stock dividends are to be considered as income *unless the testator or settlor clearly expressed a contrary intent.* In the case at bar, the settlor's intent is clear and unequivocal that *all* stock dividends shall be deemed principal; such intent should prevail. Professor Austin W. Scott aptly states: "The properly expressed wishes of the settlor should be carried out unless they are clearly contrary to public policy. There is no policy today which would preclude him from directing that small as well as large stock dividends should be allocated to principal. Where the settlor has a large or controlling interest in a corporation, it might be disastrous if the trustees were to lose control by compelling them to disregard the settlor's expressed intention by distributing stock dividends to the income beneficiary. See Haas Trust, 37 D. & C. 2d 593. Moreover, the tax consequences of such a compulsory distribution might be most unfortunate."[12]

The court below fell into error in two respects: first, in treating as "income" and within the orbit of the Act Against Accumulations, supra, those dividends which, at the time of their receipt, were clearly mandated by the legislature to be deemed "principal" and not "income"; second, in completely ignoring settlor's unequivocally expressed intent that such dividends be considered as "principal". Such errors led to a result contrary to the legislative intendment and the views of this Court set forth in *Pew.*[13]

---

[12] See Note 11.

[13] *McIlhenny Estate*, 15 Fid. Rep. 367 (1965), which reached the same result as the minority would reach, was, in our view,

The decree of the court below must be reversed. To do otherwise would repudiate the legislative direction that these stock dividends be deemed, at the time of their receipt, "principal" and not "income", to extend the prohibition of the Act Against Accumulations, supra, to items which were deemed "principal" and not "income", to nullify and conflict, in large measure, with that which this Court in recent years held in *Catherwood,* supra, *Norvell,* supra, *McEldowney,* supra, *Reznor,* supra and *Arrott,* supra, and to reach a conclusion which would only result in creating chaos in an area of the law where such should be avoided.

Decree reversed. Costs on estate.

Mr. Justice COHEN took no part in the consideration or decision of this case.

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

In my view this case presents little difficulty. We held most recently in *Arrott Estate,* 421 Pa. 275, 217 A. 2d 741 (1966) that the 1947 Principal and Income Act could and should be applied to trusts created before its adoption. That legislation clearly provides that all stock dividends shall be deemed principal, a legislative directive which accords with Mr. Hallowell's expressed intention. Thus, since the Legislature has told us that during the period these dividends accrued, i.e., during the period prior to the 1963 amendments to the Principal and Income Act, all stock dividends are to be deemed principal, obviously a direction by the settlor to accumulate these dividends as part of principal does not violate the Statute Against Accumulations.

---

erroneously determined. The Orphans' Court of Allegheny County in *Trust of W. L. Mellon* (No. 1069 of 1965), and *Darlington Trust,* 115 Pitts. L.J. 71 (1966), which reached the same result we reach, was eminently sound in its view. In *McIlhenny,* Judge BOLGER wrote a strong dissenting opinion.

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

The Majority Opinion in *Hallowell Trust* has three vices: (1) it may enrich or pauperize a life tenant every year at the whim of the Legislature, which is ridiculous; (2) in practical effect, it wipes out the applicability of the Statute against Accumulations to trusts and wills and written instruments at the date they were created or became effective; and (3) by necessary implications (or expressly), it overrules this Court's decisions in *Pew Trust,* 411 Pa. 96, 191 A. 2d 399; *Cannistra Estate,* 384 Pa. 605, 121 A. 2d 157; *Castner Estate,* 412 Pa. 232, 194 A. 2d 330 (October 1963, which we note approved *Maris's Estate,* 301 Pa. 20, 151 A. 577); and *McIlhenny Trust,* 15 Fid. Rep. 367 (Orphans' Court of Philadelphia County).

In his *1935* inter vivos trust, the settlor Howard T. Hallowell, after giving the trust income to his wife for her life, clearly expressed his intention that stock dividends paid on the Standard Pressed Steel Company stock, which constituted the corpus of the trust, be and remain part of the *corpus for the life of his wife.* In view of this provision of the trust, it is easily understandable why the Majority desire to reach the result they do. Nearly everybody dislikes the Statute against Accumulations and also the Rule against Perpetuities, each of which nullifies and destroys the *intent* of a testator or settlor. However, the Statute against Accumulations was the law of Pennsylvania at the time of the creation of the trust and had been the law of Pennsylvania since 1853, and, with a very important change, still is the law. The Majority Opinion is merely another example of the maxim that "hard cases [i.e., claims which are unappealing or inequitable] make bad law."

The Majority reach their result by concluding that the Principal and Income Act of 1947 requires treating

six per cent (annual) stock dividends as principal and summarily dismissing the Statute against Accumulations—the Act of April 18, 1853, P. L. 503, 20 P.S. §301.2—as being "without present application." Cf. *Catherwood Trust,* 405 Pa. 61, 173 A. 2d 86.

When this trust was created in 1935, it was well settled law that a direction to keep these small stock dividends intact and as additions to principal was invalid and void. See *Maris's Estate,* 301 Pa., supra. *Maris's Estate* held that a similar direction to allocate stock dividends to principal was void under the Statute against Accumulations because such stock dividends in fact and in law constituted income. Since *Maris* was bottomed and decided on the Statute against Accumulations (1853), we must review it and subsequent statutes and decisions.

The Statute against Accumulations, i.e., Act of April 18, 1853, supra, pertinently provided in Section 9 : ". . . no person . . . shall . . . by any deed, will, or otherwise, settle or dispose of any real or personal property, so and in such manner that the rents, issues, interest, or profits thereof, shall be wholly *or partially accumulated for any longer term than the life or lives . . . of any such grantor . . . settler* [sic] . . . *or testator . . . ."** The Majority admit that this "statutory phraseology embraces 'income.' "

Section 9 of the Statute against Accumulations was amended by the Act of May 25, 1939,\*\* P. L. 201, to permit a direction by a settlor or a testator to allocate *extraordinary\*\** dividends (either cash or stock),

---

\* Italics throughout, ours, unless otherwise noted.

\*\* The Majority Opinion quotes at great length from an opinion of Professor Austin W. Scott, which was part of an amicus brief filed in this case. As Scott states: "The Pennsylvania legislature was not satisfied with the decision in Maris's Estate. By the Act of May 25, 1939, P. L. 201, it is provided that in *trusts becoming*

and profits realized from the sale of certain stock to principal.

In 1947, the Rule against Accumulations was incorporated into the Estates Act of April 24, 1947, P. L. 100. In this Estates Act, the Rule against Accumulations again permitted a settlor or testator to direct (or authorize) the allocation of *extraordinary** dividends to principal, and to that extent *limitedly repealed Section 9* of the Statute against Accumulations of 1853, supra. This repealer specifically provided in Section 20 that the Estates Act repealed the Statute against Accumulations *"so far only* as relates to conveyances *effective on or after* the first day of January, one thousand nine hundred forty-eight."*** We may again note that the Statute against Accumulations, like the Rule against Perpetuities, invalidates or destroys the intention of a settlor or a testator when he seeks to accumulate income for a longer period of time than the Statute or Rule permits.

The Majority Opinion holds that whether a direction to treat dividends as principal or income depends

---

*effective thereafter* provisions directing that *extraordinary* dividends in stock or cash should be treated, in whole or in part, either as principal or income, should be valid and enforceable. Thereafter the Estates Act of 1947, §6, was amended to provide that a direction or authorization to apply to principal in whole or in part *extraordinary* dividends should be valid. The doctrine of the Maris case was repudiated by the legislature, at least as to trusts *thereafter created."* (Emphasis supplied.)

* It is important to note that both the 1939 and the 1947 Acts which changed the Rule against Accumulations were limited to *extraordinary* stock dividends and made no reference to small or ordinary stock dividends.

** Finally, in 1956, the Statute or Rule against Accumulations, as set forth in the Estates Act of 1947, supra, was amended effective April 1, 1956, P. L. 1073, to provide that: "No direction or authorization to accumulate income shall be void, except . . . [u]pon the expiration of the period allowed by the common law rule against perpetuities as measured by actual rather than possible events, . . ."

200

upon each Act of the Legislature and the date it was passed and made applicable—i.e., whether before 1939, before 1945, before 1947, before 1956, before 1963, or thereafter. If the Majority Opinion is correct—that a Legislature can change at will, and *vary from year to year,* a testator's or settlor's meaning of "income" or "principal"—this can create (1) not only absurdity but chaos, and (2) also possible poverty for a life tenant who is almost always the primary beneficiary of a settlor and testator. For example, the Legislature of Pennsylvania now meets annually and can, according to the Majority Opinion, *change annually* what stock dividends belong to a widow who is given the income for life and what must belong to the remaindermen.

## Statutes

The Principal and Income Act of May 3, 1945, P. L. 416, was in effect for only about two years when it was repealed in toto by the Principal and Income Act of July 3, 1947, P. L. 1283, 20 P.S. §3470, which reenacted almost verbatim the Act of 1945.

Section 2 of the Principal and Income Act of *1947* pertinently provided: "This act shall govern the ascertainment of income and principal, . . .: *Provided, That the person establishing the principal may himself direct the manner of ascertainment of income and principal . . . and such provision and direction, where not otherwise contrary to law, shall control, notwithstanding this act.*" This proviso and condition is utterly ignored by the Majority, even though the Majority Opinion states that "Time and again, this Court has stated that, unless in violation of public policy or the law, the intent of a settlor must prevail." Furthermore, if the Principal and Income Act of 1947 treated

*all* stock dividends of the kind and rank here involved *as principal* (in the absence of a contrary direction by the settlor) in trusts created thereafter or theretofore, why was it necessary for the Legislature, in the Estates Act of the same year, to approve directions to apply *all extraordinary* dividends to principal in conveyances made *thereafter?*

The Principal and Income Act of 1947 was amended by the Act of August 1, *1963*, P. L. 442, 20 P.S. §3470.5, to provide that dividends or distributions of stock of the same class shall be deemed income if the number of shares distributed was six per cent or less. However, this amendment by its terms is applicable only to corporate dividends paid subsequently to August 1, 1963.

## Decisions

This is obviously and unquestionably a *pre-1945* trust—such trusts have often vexed and more recently perplexed many. Notwithstanding the Majority's wishful thinking, *Maris's Estate*, 301 Pa., supra; *Pew Trust*, 411 Pa., supra; and the cases hereinafter discussed, together with the Statute against Accumulations, govern, without any doubt, the questions or issues raised or involved in this case. In *Maris's Estate*, this Court decided that small stock dividends were, and always had been for 100 years, income* and a provision in a will that "all stock dividends shall be considered as principal" was in practical and legal effect a direction to accumulate income for the life of testator's wife and was contrary to the express terms of the Act of April 18, 1853, supra, and therefore void.

The Pew Trust was created in 1932 and involved the question of whether annual stock dividends of *six*

---

* With certain exceptions, not here relevant.

*per cent or less* were income in the absence of a clear expression of a contrary intent by the creator of the trust. We note at the outset that neither the Statute against Accumulations nor the long and well established principle that the *donor's intent cannot contravene or overcome the law* were involved, discussed or considered in *Pew Trust*. In that case, the Court pertinently said (pages 102, 107-108, 108-109, 109): "Never in Pennsylvania's long history until 1945, had a life tenant's right to ordinary cash and *ordinary stock* dividends been denied. [Emphasis in original.] . . . As the Court aptly said in Schaad v. Hotel Easton *Co.*, 369 Pa. 486, 87 A. 2d 227 (page 491), '. . . *"no principle is more firmly established than that the laws which were in force at the time and place of the making of the contract enter into its obligation with the same effect as if expressly incorporated in its terms"*: Beaver County Building and Loan Association v. Winowich, 323 Pa. 483, 489, 187 A. 481, 484. . . .' *We must therefore construe the 1947 proviso in its application to this 1932 trust in the light of her language which in 1932 had a clear meaning* to laymen, lawyers and Judges alike. . . . [Emphasis in original.]

"While very few lawyers knew or could unravel and very, very few laymen knew or had ever heard of Pennsylvania's equitable Rule of Apportionment of extraordinary stock dividends and of proceeds of sale of stock, every lawyer *and every layman*\* (testator and settlor alike) and every cestui que trust knew that small stock dividends had for over 100 years *always*\* been considered to belong to the life tenants, who were (almost always) the primary objects of the settlor's bounty, and not to great grandchildren or unknown or unborn remaindermen. Indeed, if Mrs. Pew had wished and intended all stock dividends (*includ-*

---

\* Emphasis in original.

*ing those which represented earnings*) to be a part of principal, *such a provision and intent would have been illegal in 1932* as in violation of the then rule against accumulations: See Warden Trust, 382 Pa. 311, 115 A. 2d 159; Cannistra Estate, 384 Pa. 605, 121 A. 2d 157; Act of April 18, 1853, P. L. 503. . . ."

In the instant case, there was no doubt of the testator's intent to allocate small stock dividends to principal instead of having them continue to be income. *However, a settlor's or testator's intent cannot prevail when it is contrary to or violative of the law, and to this extent his intent is limited and must yield to the pertinent law.* Pew Trust, 411 Pa., supra; *Cannistra Estate,* 384 Pa., supra; *Castner Estate,* 412 Pa. 232, 194 A. 2d 330. In *Pew Trust,* 411 Pa., supra, the Court said (page 106): "In Walton Estate, 409 Pa. 225, 186 A. 2d 32, the Court aptly and relevantly said (page 231): ' " ' "No rule regarding wills is more settled than the great General Rule that the testator's intent, *if it is not unlawful,* must prevail" ' ": Collins Estate, 393 Pa. 519, 522, 143 A. 2d 45. . . .' "

In *Cannistra Estate,* 384 Pa., supra, the beneficiaries of the testamentary trust sought its termination. The Court aptly said (page 607): "No rule regarding wills is more settled than the great General Rule that the testator's intent, *if it is not unlawful* must prevail! . . . The foregoing century-old principle or rule is nevertheless subject to several exceptions: For example, the *testator's intent cannot prevail* when it is against public policy (Moorehead's Estate, 289 Pa. 542, 137 A. 802; Cf., also, Africa Estate, 359 Pa. 367, 59 A. 2d 925); or *violates* the rule against perpetuities (Newlin Trust, 367 Pa. 527, 80 A. 2d 819), or *statutory restrictions such as the statute of accumulations* (Warden Estate, 382 Pa. 311, 115 A. 2d 159); or where the testator gives a fee simple or absolute estate

and then attempts to impose restraints on sale or alienation. (Sowers Estate, 383 Pa., supra; Stineman v. Stineman, 382 Pa. 153, 114 A. 2d 137.)"

In *Castner Estate*, 412 Pa. supra, which involved a 1932 testamentary trust, the Court (in an Opinion by Mr. Justice BENJAMIN R. JONES) reaffirmed *Maris's Estate*, 301 Pa., supra, and held that a testamentary direction to accumulate income in a testamentary trust was void under the Act of April 18, 1853. In *Castner Estate*, Mr. Justice JONES speaking for the majority of the Court, said (page 240) : "However, as we stated in Howell's Estate, 180 Pa. 515, 519, 37 Atl. 181: '. . . when the policy of the law is violated by a direction to accumulate no effect should be given to the intention of the testator . . . .' " In the dissenting Opinion by Mr. Justice ROBERTS, he relevantly says (in a footnote, page 241) : "Section 9 of the Act of April 18, 1853, P. L. 503, 20 P.S. §3251, is applicable. It is repealed only as to conveyances effective on or after January 1, 1948."

The Majority Opinion not only overlooks the facts in *Pew Trust*, 411 Pa., supra, and mistakes the law, but in order to sustain their conclusions, the Majority have to expressly repeal the 1853 Statute against Accumulations which was in effect at the time of the creation of this trust in 1935.

The error of the Majority is made even clearer by the fact that under their interpretation and theory, they would hold that small stock dividends in a pre-1945 trust are *principal* and after 1945 are *principal or income, depending upon the annual whim of the Legislature and changeable retroactively by it every year it meets*. This is obviously unrealistic and absurd. Both the settlor's intention and this provision of the Hallowell trust must be ascertained and *governed and limited by the law in effect at the time this inter vivos trust was created*.

To summarize: For over 100 years prior to 1945, (1) *all annual dividends*—stock as well as cash—of *six per cent or less were income*, unless the testator or settlor *lawfully* directed to the contrary; and (2) prior to 1945, neither the Principal and Income Act of 1945 nor any other similar Act or Court decision made annual cash or stock dividends of six per cent or less principal unless the testator or settlor clearly *and lawfully* so provided—see *Pew Trust*, 411 Pa., supra, which overruled a contrary footnote in *Catherwood Trust*, 405 Pa., supra—; and (3) such a provision by a settlor or testator was valid if, and only if, it did not violate the law.

In this case, President Judge ALFRED L. TAXIS, JR., in an able adjudication, correctly held (1) that settlor intended all stock dividends, irrespective of the amount, to be retained in principal; and (2) that the net income from his estate be paid to his wife for her life; and (3) that the Principal and Income Act of 1947 does not apply to stock dividends of six per cent or less; and (4) that the stock dividends of six per cent or less are income unless the settlor or testator (a) clearly directed to the contrary and (b) such direction was valid and not contrary to law; and (5) that a direction in a pre-1945 trust to accumulate stock dividends of six per cent or less by adding them to principal is not valid *if and when and to the extent it violates the Act of 1853*. It follows that these small stock dividends are payable after settlor's death as income to the settlor's wife for her life.

For all of the foregoing reasons, I would affirm the Decree of the Court below.

Mr. Justice MUSMANNO joins in this dissenting Opinion.