## Tyler Trust

Before Bolger, Lefever, Saylor and Shoyer, JJ.

*John Russell, Jr., Oscar M. Hansen* and *Richard P. Brown, Jr.,* for exceptant.

*Richard B. Klein,* guardian-trustee ad litem, contra.

*Maurice Heckscher, Samuel S. Logan, Jr.,* and *David T. Sykes,* for accountants.

OPINION SUR EXCEPTIONS

LEFEVER, J., March 17, 1970.—The exceptions before this court raise the question of apportionment between principal and income of stock dividends of six percent or less, amounting to about $9,000,000, received and retained in principal by the trustee from April 5, 1932, to date in an inter vivos trust created on May 30, 1917. That this question is again before this court is clear evidence that nine years after the Supreme Court in Catherwood Trust, 405 Pa. 61 (1961), made a valiant effort to resolve the confusing, complex and difficult problems of apportionment in Pennsylvania, the law on this subject has not yet been settled.[1]

The unhappy state of the law was well described by Mr. Justice Jones in Catherwood, supra, at pages 70 and 71, as follows:

---

[1] There are still pending accounts in two very sizeable estates assigned for audit to the writer of this opinion a number of years ago, which have been continued again and again at the request of the interested parties, pending decision by the Supreme Court in Pew Trust, 411 Pa. 96 (1963); McIlhenny Estate, 36 D. & C. 2d 212 (1965), (which everyone expected to reach the Supreme Court, but was not appealed); Hallowell Trust, 432 Pa. 184 (1968); Darlington Estate, 434 Pa. 198 (1969); and now the instant case. In contrast, many such problems in smaller estates have been resolved by the auditing judge's adopting the position taken by the accountants pursuant to Philadelphia Orphans' Court Rule *63.1 (c), because the parties did not see fit to litigate items which were de minimis; however, such disposition did not solve the problems or make them disappear. On this subject see comments: Temple Law Quarterly, Vol. 43, No. 1, Fall 1969, p. 1, et seq.; University of Pennsylvania Law Review, Vol. 112, p. 290, et seq.

"The present situation of the law constitutes an 'apportionment morass' as President Judge Klein so aptly stated. If a trust was created prior to May 3, 1945, the Pennsylvania Rule of Apportionment now governs: if a trust was created thereafter, the Massachusetts Rule, codified by the legislature, governs. Orphans' courts *now* have three different sets of apportionment formulas to apply: (1) for trusts created prior to May 3, 1945; (2) for trusts created between May 3, 1945 and before July 3, 1947; (3) for trusts created after July 3, 1947."

In a footnote to the above quotation, Mr. Justice Jones added:

"If the legislature should amend (or repeal) the Principal and Income Act of 1947, the Orphans' courts would then have four different sets of apportionment formulas to apply, depending upon the creation dates of various trusts. If, over a period of years, the legislature should amend the Principal and Income Act of 1947 five times, the Orphans' courts would have seven differing apportionment formulas to keep straight and apply; if the Act were amended 10 times, they would have twelve differing formulas to understand and apply. The situation is bound to get worse; it can never get better. Unless, that is, Crawford Estate [362 Pa. 458] is overruled."

It is significant that, although Crawford was overruled in Catherwood, Mr. Justice Jones' prophecy has come true, because a fourth apportionment situation has been created by the 1963 amendment to the Principal and Income Act, viz., stock dividends of six percent or less, received after September 29, 1963, are now income, absent a contrary intent expressed by the creator of the trust.

Mr. Justice Jones' opinion in Catherwood continued, at pages 74 and 75:

"In Cunningham Estate, supra, [395 Pa. 1] p. 11, noting the unworkability of the Rule . . . we therein stated: 'Present day economic conditions, particularly in the corporate field, present a drastic contrast to the economic conditions in existence at the inception of and during the formative years of the Rule, and corporate practices plus multiplication and extension of taxes has made the application of the Rule even more difficult and often unworkable. . . In recent years the ingenuity of corporate management, seeking to achieve various ends such as broadening or enhancing the market for its stock, effect tax savings, etc., has produced a complexity of corporate transactions which involve the transfer on corporate books of earnings, earned surplus, etc., from one account to another. Earnings, under modern corporate practice, no longer retain the simplicity of meaning of the earnings considered by this Court in Earp's Appeal, supra, [28 Pa. 273] and other decisions.' Other reasons, such as the prevalence of common stocks in trust portfolios, the unprecedented boom during the last decade which resulted in the issuance of 'more stock dividends and offerings than our economy has ever experienced before', etc., have added to the practical difficulty of applying the Rule." [2]

With the abolition of the Pennsylvania rule of apportionment decreed in Catherwood, most apportionment problems for a brief period of time appeared to be resolved and bench, bar and fiduciaries began to breathe more easily. Then Pew Trust, 411 Pa. 96 (1963), was handed down and again created an atmosphere of uncertainty. The court said, at pages 102 and 103:

---

[2] Mr. Justice Jones then quoted at length from Judge Klein's adjudication on the complexities, confusion and difficulties of applying the rule.

"In all the history of Pennsylvania Rule of Apportionment this Court has never held that stock dividends, up to and including 6%, were apportionable, but on the contrary all such dividends were considered income. Catherwood recognized and confirmed this historical fact. We believe it was not the intent of the Court in the Catherwood decision—but if it was, the dicta in a footnote to that effect is hereby overruled—to abolish the right of a life tenant to *ordinary* stock dividends or ordinary cash dividends in pre-1945 trusts. . ."

This statement of the law was not in accord with the long established, usual practice of fiduciaries, lawyers and Orphans' Court judges who had routinely applied the Pennsylvania rule of apportionment to small stock dividends for many years in countless cases.[3] Pew raised the question whether stock dividends of six percent or less, received after May 3, 1945, were payable to income beneficiaries or were principal as specified in the Uniform Principal and Income Act of May 3, 1945, P. L. 416. The majority of this court thought that the doctrine expounded in Pew made such dividends income and so held in McIlhenny Estate, 36 D. & C. 2d 212, 15 Fiduc. Rep. 367 (1965). However, Hallowell Trust, 432 Pa. 184 (1968), decided otherwise.[4]

In Hallowell, the court held that settlor's direction to place stock dividends of a 1935 inter vivos trust in principal was binding upon trustees as to stock dividends of six percent or less, received after May 3,

---

[3] See Estate of Thomas Dolan, deceased, Philadelphia O.C., no. 3007 of 1940, account, report of guardian and trustee ad litem, adjudication, dated September 23, 1960, and schedule of distribution approved March 6, 1961; and Ball Estate, 36 D. & C. 2d 698, 701 (1965).

[4] The footnote, at page 195, stated: "McIlhenny Estate, 15 Fid. Rep. 367 (1965), which reached the same result as the minority would reach, was, in our view, erroneously determined. . ."

1945. The court, speaking through Mr. Justice Jones, stated, at page 194:

"We disagree with the interpretation placed by the Court below on Pew that all small stock dividends, regardless of when received and regardless of what the legislature has declared such small stock dividends to be deemed during the period of receipts of such dividends, must be classed as income. Pew does not stand for this proposition."

Hallowell apparently overruled the first of the alternate holdings in Pew. Mr. Chief Justice Bell, the author of Pew, so concluded in his dissent in Hallowell, at page 197, viz., "The majority opinion in Hallowell Trust . . . by necessary implications (or expressly), . . . overrules this Court's decisions in Pew Trust, 411 Pa. 96. . ."

Next came Dunham Trust, 433 Pa. 273 (1969). Here, settlor in this 1941 inter vivos trust, consisting of 2,500 shares of Eureka Specialty Printing Company stock, provided for transfer to life tenant "during her lifetime of any and all income paid or to be paid or arising from the aforesaid stock." The court expressed doubt as to the exact meaning of this language. It is clear, however, that this language in no sense was a direction to place stock dividends in principal. The court ruled that the Dunham Trust was to be treated as a 1954 trust because of amendments made in that year with the approval of all interested parties and, therefore, the case was governed by the Principal and Income Act. However, the court,[5] speaking per Mr. Justice Roberts, at page 283, added the dictum:

"For if the trust was created in 1941, our decision in Pew Trust applies 'that as to . . . inter vivos trusts created prior to the effective date of the Principal and

---

[5] Mr. Chief Justice Bell and Mr. Justice Cohen dissented without opinion.

Income Act of 1945 a gift of income or net income included small stock dividends of 6% or less, . . .' 411 Pa. at 109, 191 A.2d at 406. This would result in a stock distribution being apportioned to income."

It is noteworthy that the court in Dunham did not squarely consider the effect of Hallowell; McEldowney Estate, 415 Pa. 87 (1964); Norvell Estate, 415 Pa. 427 (1964); or Arrott Estate, 421 Pa. 275 (1966); which held that an apportionment statute can apply retroactively so long as it is not arbitrary.

Finally, Darlington Estate, 434 Pa. 198 (1969), was decided. It squarely held that Maris is still the law, stating, at pages 203 and 204:

"Therefore, we hold that as to all stock dividends received by a trust prior to July 3, 1947, the principles of Maris still apply (except as noted in the margin).[*] This determination in no way narrows our holding in Catherwood Trust, 405 Pa. 61, 173 A.2d 86 (1961), Norvell Estate, 415 Pa. 427, 203 A.2d 538 (1964), and Arrott Estate, 421 Pa. 275, 217 A.2d 741 (1966), that the provisions of the Principal and Income Act of 1947 apply to *all* trusts no matter when they were created. It is only the dividends *received* prior to the Principal and Income Act which are governed by the prior law." [6]

Analysis of the cited cases which have been decided since Pew, indicates that our Supreme Court has held: (1) that when the legislature used the language that "all" stock dividends are principal, "all" included small stock dividends; (2) that the legislature clearly intended that "all" in the act applies to post-1945 receipts of pre-1945 trusts; and (3) that the retroactive application of the Principal and Income

---

[*] The footnote is not here quoted, since it is not vital to the instant case.

[6] Mr. Chief Justice Bell did not participate in the consideration or decision of Darlington.

Act is not arbitrary and, therefore, not unconstitutional. In any event, it appears impossible to reconcile the continued existence of Maris, Hallowell and Darlington along with Pew. Hence, it would seem that Pew is now sui generis.

We shall now specifically consider seriatim the three issues involved in the instant case, viz., (1) the meaning of settlor's language as to the distribution of stock dividends; (2) the allocation of stock dividends in the four periods herein involved; and (3) where some of the stock, retained in principal by the accountant has been held by the auditing judge to be income, the disposition of apportionable stock dividends, etc., received thereafter on such income items.

### 1. *Meaning of Settlor's Language*

The critical language in paragraph 7 of the trust instrument is ". . . all allotments of bonds, stock and stock dividends shall be treated and regarded as belonging to the principal of the trust estate, and not as income." After careful consideration and thorough examination of the record in this case, we have come to the conclusion that the learned auditing judge properly interpreted this language to mean ". . . all . . . stock dividends shall be treated and regarded as belonging to principal of the trust estate and not as income." We agree with the reasons set forth by the auditing judge in support of this conclusion; there is no need to repeat them here. Moreover, a reading of the entire document strengthens this view. So also do the position and circumstances of the settlor, when, following the mandate of our Supreme Court,[7] we place ourselves in his armchair as he drafted the trust instrument.

---

[7] Burleigh Estate, 405 Pa. 373; Pew Trust, 411 Pa. 96; and Dinkey Estate, 403 Pa. 179 (1961).

Settlor was an unusually successful and wealthy man. His primary interest was to continue the trust and preserve the principal thereof as long as the rule against perpetuities permitted, viz.:

"THIRD: No part of the principal composing said trust estate shall be divided or paid over until the end of the said period of twenty-one (21) years from and immediately after the death of the last surviving lineal descendant of the said Sidney F. Tyler [settlor] living at the time of his death, and thereupon at the end of said period the trust hereby created shall terminate, . . ."

Settlor further provided that the corpus be distributed "to the grandchildren of said Sidney F. Tyler then living, and the descendants of such of his grandchildren as shall be then dead per stirpes. . ." The size of this and other trusts created by him[8] and the large income therefrom also suggest that settlor was not interested in increasing the income by distributing stock dividends or other apportionable items to income beneficiaries, but that he intended to keep such items intact in principal. Furthermore, it is most unlikely, and unreasonable to believe, that such a precise settlor and such an able scrivener would carefully and expressly specify what allocation should be made of apportionable items in the very rare and unusual case of a stock dividend, to be paid for in part out of a cash dividend,[9] and then leave the

---

[8] This trust was funded with $1,490,060.49 in 1917 and $919,761.47 and $1,664,952.21 were thereafter added. The companion trust (no. 1239 of 1967) was funded with $842,150. The present market value of the principal of the instant trust, according to the account, is now $19,389,826.66.

[9] Hybrid-type stock dividends are on unusual and rare occasions issued to avoid some restriction on the direct issuance of a stock dividend. For example, rights to purchase shares of stock are issued at the same time as a cash dividend. The cash may be applied to pay for the shares purchased by the exercise of the

instrument silent as to the disposition of apportionable items in the common, ordinary situations. It is to be observed that although the rare hybrid dividends are treated as stock dividends, they are not called "stock dividends," but are identified by their component parts, cash dividends, stock rights, etc. See Cook, Corporations, sec. 25 (8th Ed., 1923). Moreover, significantly, there is no evidence that in the instant trust and the companion trust the trustees received any of the "hybrid" stock dividends that required payment of cash. If the settlor's intent was as argued by exceptant, then settlor with the aid of his able scrivener would undoubtedly have expressly directed that all apportionable items be treated as income. However, he did not do so.

It is true that, as exceptant argues, stock dividends are first "declared;" however, thereafter the number of shares so declared, are "allotted" to the shareholders. The word "allotment" is merely synonymous with "distribution" or "allocation." The use of this word "allotment" does not limit the direction in the trust instrument to stock dividends "paid for." [10] Finally, from the creation of the trust in 1917 until April 3, 1932, while the trust was revocable, and later, during settlor's lifetime when paragraph sixth of the trust instrument required the trustees to consult him

rights; hence, the shareholder receives extra shares without paying extra cash for them. See Thompson Estate, 262 Pa. 278 (1960); Stokes Estate, No. 1, 240 Pa. 277 (1913). Cf. Teehan v. United States, 25 F.2d 884 (D. C. Mass., 1928).

[10] It is of vital importance that the precise language used in the instant trust was a common clause used by a noted Philadelphia lawyer in drafting trust instruments. See Warden Trust, 382 Pa. 311, 315 (1935); Harkness Trust, Philadelphia O.C., no. 2182 of 1953; and Dolan Estate, Philadelphia O.C., no. 3007 of 1940. No question has been heretofore raised in the cited cases that this language did not constitute a direction that *all* stock dividends be treated as principal and not just such "hybrid" stock dividends as required payment of cash.

as to purchases and sales of investments and when he had the right to draw down for himself any income or principal of the trust, he permitted the stock dividends issued to the trustee to remain in principal. This bespeaks his intent louder than words. Finally, history reveals the complexities of applying the Pennsylvania apportionment rule for 50 or 60 years before the creation of this trust. This knowledgeable, experienced settlor was undoubtedly aware of this and endeavored to express his intent as to the allocation of stock dividends and other apportionable items.

## 2. *Allocation of Apportionable Items*

Applying the settlor's language as above interpreted to the instant case, we agree with the auditing judge that under the most recent decisions of the Supreme Court (1) all stock dividends received by the trustee prior to settlor's death on June 3, 1935, remain in principal, because the statute against accumulations does not prohibit accumulations during a settlor's lifetime; (2) from settlor's death on June 3, 1935, until May 3, 1945, the date the initial Principal and Income Act became effective, stock dividends of six percent or less are distributable to income beneficiaries because Maris interdicted the application of settlor's intention to place these items in principal as a violation of the statute against accumulations; (3) from May 3, 1945, until September 30, 1963, all stock dividends were principal as provided in sections 2 and 5 of the Principal and Income Act; and (4) subsequent to September 29, 1963, stock dividends of six percent or less are principal because settlor's direction that stock dividends shall be considered principal governs under the express provisions of the Principal and Income Act, as amended in 1963. There is no need to repeat here the cogent reasons stated by the learned auditing judge in support of these conclusions.

### 3. *When a Trustee holds both "Income" and "Principal" shares of Stock and sells part of its Holding which Stock is Sold?*

There have been numerous stock dividends declared and stock subscription rights issued, upon the stock dividends received by the trustee during the period between June 3, 1935, and May 3, 1945, which the auditing judge properly held to be income. All of these stock dividends were retained in principal by the trustee. In some instances, there was a sale of a portion of the stock of a particular company. The question then arises as to which shares were sold, the "income" shares or the "principal" shares. The exceptant takes the position that the first sales made by trustee must be treated as sales of shares belonging to principal, since the trustees had no right or power to sell stock of the income beneficiaries; and, hence, to the largest extent possible the shares must go to the income beneficiaries.

In considering this question it is noteworthy (1) that during 35 years of the continuing operation of this trust the income beneficiaries received periodic detailed statements of the administration of the trust, but they made no request for distribution to them of any of the stock dividends, etc.; (2) that the trustee has kept these items in principal, believing they properly were principal; (3) that to unscramble these apportionable items at the present time requires much calculation, and (4) that any rule we adopt today will, or at least should, apply in bad times as well as in good times and will apply to apportionment of losses as well as gains in the value of the stock after distribution thereof as stock dividends. Considering all the factors involved, we are of the opinion that the auditing judge reached a wise and equitable result when he ruled that these items should be distributed pro

rata,[11] except that in the case of the sale of a small stock dividend or rights to subscribe to stock promptly after the event, the proceeds thereof are to be allocated to income. It is to be noted that there is no need to apply a rule of law to segregate mingled assets when the assets have not, in fact, been mingled.[12]

Lord Coke's famous aphorism ". . . the knowne certaintie of the law is the safetie of all" applies particularly in the field of apportionment. Here, certainty is more important than pure *equity*. Many large trusts still exist in Philadelphia and throughout the Commonwealth of Pennsylvania in which accounts have not been filed for many, many years and in which numerous apportionable items running into many millions of dollars in value have been allocated by the trustees to, and remain in, principal. In many of these cases, the income beneficiaries are satisfied to have these stock dividends and other apportionable items remain in principal; or they do not wish a court battle with their children or grandchildren. However, as in Dunham, they have the specter of the tax collectors leaning over their shoulders, demand-

---

[11] Frick Estate, 4 D. & C. 2d 247 (1955), decided that the first such stock sold was that belonging to principal. Ball Estate, 36 D. & C. 2d 698 (1965), decided the first stock sold was that belonging to income. There is little substance to the argument advanced in Frick, that "the presumption is that the trustee would only do that which he was authorized to do." Such a presumption in the instant case would be a fiction, since the trustee clearly thought all stock dividends at issue were principal, albeit under our present decision it was mistaken as to some of the stock dividends. Such a fiction should not be applied in such situation. See Primeau v. Granfield, 184 Fed. 480, 484 (C.C.S.D.N.Y., 1911), reversed on other grounds.

[12] For example, on January 30, 1956, the trust held 1,100 shares of American Electric Power Company. On that date a two percent stock dividend of 22 shares was received by the trust and a week later 22 shares were sold.

ing maximum State and Federal taxes. Proper estate planning demands an answer.

In view of the many uncertainties presently existing in the law on this subject, we deem it advisable to summarize the rules, so that fiduciaries and lawyers may know how to distribute these items. The decisions of the Supreme Court of Pennsylvania and the reasoning set forth above indicate that the rules are as follows:

1. In a trust created prior to the Act of May 25, 1939, P. L. 201, where a testator or settlor directs or clearly expresses an intention that all stock dividends, rights to subscribe to stock and other apportionable items are to remain in principal, the following principles apply:

(a) During the lifetime of the settlor stock dividends, rights to subscribe to stock, and capital gains on sales of stock remain in principal because the statute against accumulations does not prohibit accumulations during the lifetime of the settlor;

(b) From the date of the settlor's death until May 3, 1945, stock dividends, rights to subscribe to stock and capital gains on sale of stock must be apportioned under the Pennsylvania Rule of Apportionment because the placing in principal of any item which is designated income under that rule violates the statute against accumulations; excepted are small stock dividends of six percent or less, which under Catherwood and Pew become income during this period;

(c) From May 3, 1945, until September 30, 1963, all stock dividends, rights to subscribe to stock and capital gains on sales of stock are principal, as directed by the Principal and Income Acts of 1945; and

(d) Subsequent to September 29, 1963, all stock dividends, rights to subscribe to stock and capital gains on the sale of stock are principal because the amendment provides that stock dividends of six per-

cent or less shall be treated as income only where there is no express direction or clearly stated intention of testator or settlor to the contrary.

2. In all trusts, irrespective of the date of their creation, where the settlor or testator expressly directs or states his clear intention that all stock dividends, rights to subscribe to stock and other apportionable items shall become income, stock dividends, rights to subscribe, proceeds of sale of stock above the intact value, etc., become income because neither the statute against accumulations, nor the provisions of the Principal and Income Acts of 1945 and 1947, nor the amendment thereto effective September 30, 1963, apply in the face of an express provision that they be treated as income.

3. Where there is no direction or clearly expressed intention by settlor or testator in the trust instrument as to the allocation of stock dividends, rights to subscribe to stock, and capital gains from sale of stock, the following principles apply:

(a) In pre-1945 trusts, the Pennsylvania rule of apportionment applies to all stock dividends, rights to subscribe to stock and capital gains on sales of stock, received prior to May 3, 1945, except that *all* such stock dividends of six percent or less are income as mandated in Catherwood and Pew;

(b) From May 3, 1945, until September 30, 1963, all stock dividends, rights to subscribe and capital gains on sales of stock become principal; and

(c) Subsequent to September 29, 1963, stock dividends of six percent or less become income, but all other stock dividends, rights to subscribe, and capital gains on proceeds of sales of stock, become principal.

4. Where the trust instrument gives the trustee broad discretion to treat stock dividends, rights to subscribe to stock, capital gains on sales of stock,

etc., either as income, or principal, the exercise of discretion by the trustee shall be binding, except where it would constitute an illegal accumulation interdicted by Maris in stock dividends issued prior to May 3, 1945.

5. Where items held in principal by trustees are apportionable under the above-stated rules, further stock dividends, rights to subscribe to stock and capital gains on proceeds of sales of stock received thereon shall be distributed pro rata between income beneficiaries as a class and remaindermen as a class, except where the specific number of shares constituting its stock dividend or right to subscribe are sold promptly after the trustee receives them, in which event the proceeds of the sale thereof shall be allocated to the income beneficiaries.

Applying these guidelines and the reasons so well stated by the learned auditing judge in his comprehensive and scholarly adjudication, we reach the same conclusions as the auditing judge. Accordingly, the exceptions are dismissed and the adjudication is confirmed absolutely.

Judge Bolger concurs in the result.

Administrative Judge Klein and Judge Burke did not participate in the consideration or decision of this case.