**Steel Estate**

*Montgomery, McCracken, Walker & Rhoads,* for accountant.

*Dechert, Price & Rhoads,* for claimants.

*James J. Convery,* guardian ad litem.

LEFEVER, J., February 27, 1970.—Henry M. Steel died on February 1, 1911, survived by his wife, Mary, and his four children, Warner, Marianna, Edith and Marjorie; one granddaughter, Marjorie S. Bradley (born March 17, 1908), child of his daughter, Marjorie Steel Bradley; also a grandson (en ventre sa mere) Robert W. Swift, Jr., child of his daughter, Edith Steel Swift.

By his will, dated March 19, 1906, he gave his residuary estate to his executors in trust, and after making provisions for the maintenance of his residence, which long since has been sold, and the payment of certain annuities, which long since have terminated by death of the annuitants, he provided in respect of the distribution of the income and principal as follows:

"(I) . . . I direct my executors, or the survivors or survivor of them, from the remaining income to pay unto my wife, during her life, fifty per centum thereof, and to each of my children twelve and one half per centum thereof, and in the event of the decease of any of my said children, leaving issue to survive such deceased child, said issue shall receive the portion or share of income to which the parent would have been entitled, if living. . . . If, however, any of my children shall die without issue, then the share of income of such deceased child or children shall be divided among my living children and the issue of any deceased child or children, the latter to take the portion or share as the parent or parents would have taken, if living."

. . .

"(L) Upon the decease of my wife and all of my children, the principal of my estate shall be divided among the issue of my deceased children they to take by representation, and not per capita, but the portion of the principal of my said estate shall be paid unto such issue when each one shall arrive at the age of twenty-five years, and until such time the principal to which such issue is entitled shall be held in trust by my executors, or the survivors or survivor of them, and if said issue shall die before arriving at said age, the share or portion of the principal of my estate which such issue would have received shall be di-

vided among the remaining issue of the deceased parent.

"My intention being that one fourth of the principal of the estate shall be paid to the issue of my deceased children, provided all of my deceased children shall leave issue to survive them; in the event that one or more of my children shall be deceased without leaving issue, then the principal of the estate shall be divided by representation into as many shares as there are issue living of the deceased child or children.

"In the event of the death of all of my children, should there be issue surviving any of them, it is my wish that the income of my estate shall be applied by my executors or the survivors or survivor of them, as they in their judgment shall deem proper and best, to the support, education and maintenance of any of such issue until such issue shall arrive at the age of twenty-five years when the principal shall vest in manner as aforesaid."

In paragraph (M) of his will testator provided that in the event all of his children should die without leaving issue, the principal should be distributed, three-fourths to the surviving issue of his brothers, Edward T. Steel, William G. Steel and Charles F. Steel, by representation and the remaining one-fourth among certain named charities.

By codicil C, dated June 14, 1909, testator modified paragraph (L) of his will as follows:

"In regard to clause 'L' making final devise of the principal of my estate, instead paying proportionate amounts to each grandchild when arriving at the age of twenty-five (25) years there is to be no division of the principal of my estate to any beneficiary until the youngest grandchild now living or subsequently born arrive at the age of twenty-five (25) years, each in the meanwhile however enjoying the income as provided in clause L."

Testator's wife, Mary, died on March 25, 1914. After her death, the share of income formerly paid to her was added proportionately to the shares paid to testator's four children, Marjorie Steel Bradley, who survives, Warner J. Steel, who died May 22, 1934, Marianna J. Steel, who died April 25, 1941, and Edith Steel Swift, who died February 17, 1951. Upon the deaths of Marianna and Warner, without issue surviving, their respective shares of income were added proportionately to the remaining shares.

Upon the death of Edith Steel Swift, her share was paid equally to her four children until the death on July 4, 1968, of her son, Robert W. Swift, Jr., survived by four children, Robert W. Swift, 3rd, Rosamond Swift Emery, Madelaine B. Swift and Joan Swift. The latter two, Madelaine and Joan, were minors, and James J. Convery, Esq., was appointed guardian ad litem for them by decree dated December 27, 1968. The aforesaid Madelaine B. Swift has since attained her majority.

The pending fourth account of the corporate trustee has been filed because of the death of said grandson, Robert W. Swift, Jr. The questions posed by his death are, inter alia: (1) who is now entitled to receive the income formerly paid to Robert; and (2) who will receive the principal of the trust to which he would have been eventually entitled, if he had lived.

The accountant takes the position (1) that Robert's four children, great-grandchildren of testator, are presently entitled to receive his share of the income; and (2) his share of the principal will not be vested and determinable until the class closes upon the death of Marjorie Steel Bradley, testator's last surviving child, but, in any event, his estate or heirs are not entitled to it as such. Notice of the audit, as well as the questions presented and accountant's position covering same, has been given to all interested par-

ties, including collaterals and charities who would take if testator's presently-living 35 descendants predecease Marjorie Steel Bradley, a most unlikely possibility.

The executors of Robert's Estate take the position that Robert's share of the income is now payable to his estate, contending that Robert, *at the death of his mother*, acquired an indefeasible vested interest in his grandfather's estate.

Waivers of income have been filed by all interested parties.

Where a testator provides distribution of income from a testamentary trust along family lines, but uses the designation of "child or children" of a deceased child, the courts have refused to adopt a narrow interpretation and have held that the words "child or children" mean "issue" so as to give effect to testator's intent. Thus, it was stated in Clark Estate, 359 Pa. 411, 422 (1948):

"No court will adopt a testamentary construction which will bring about such an *unnatural and inequitable distribution of testator's property unless the language of the will unequivocally requires it.* The language of this will makes no such requirement. When the testator provided for the distribution of his trust estate among '*the living children*' of his *deceased children* '*per stirpes*'—that is, . . . by representation of their parents respectively . . .' , he obviously intended to include in the term 'their living children' not only the second generation of children after him but also the third generation." (Italics supplied.)

And in Carnegie Estate, 18 D. & C. 2d 629, 633 (1958), the court stated:

"While it has been stated in many decisions that a bequest to 'children' will not be given the broad interpretation of 'grandchildren' or 'issue', this is not true

where the general plan of testator in his will indicates a family distribution among lineal descendants:" (Citing cases).

Since the courts have interpreted "child or children" to mean the second and third generation, the use of the term "issue" in the present case is much stronger; a fortiori, it must be interpreted to mean subsequent generations.

The executors under the will of Robert W. Swift, Jr., argue that the term "issue" should be limited to "child" or "children" of a deceased child. However, to so hold would bring about the strained result that if a child of testator died without issue, his or her share of the income would go to testator's other "living children and the issue of any deceased child or children" (paragraph (I) of will). However, if a grandchild died with issue, as is here the case, such issue would be excluded and a share of the income would go to the estate of the deceased grandchild and possibly outside family lines.

The instant will does not expressly cover the disposition of income in several situations, e.g., the share of income received by testator's widow is not specifically disposed of after her death; and the share of income received by a grandchild is not specifically disposed of after such grandchild's death, whether or not survived by issue. Therefore, testator's intent must be drawn from the will as a whole. This is the polestar in construction of wills: Burleigh Estate, 405 Pa. 373; Dinkey Estate, 403 Pa. 179.

For a testator to provide specifically that the share of income of a child who dies without issue shall be paid to his other issue, but that the share of income received by a grandchild shall pass to such grandchild's estate whether or not issue survive such a grandchild would be most unusual. We do not so hold here.

The bequest of income in this case to "my children" and "issue" was a classic class gift: Wood's Estate, 321 Pa. 497, at page 500. When the gift of income is to a class, and to issue of deceased members of the class, the income is distributable periodically to the living members of the class and the living issue of a deceased member, not to the estate of a deceased member of the class. Such was the holding in the recent case of Carter Estate, decided by this court and reported at 44 D. & C. 2d 509, 18 Fiduc. Rep. 222, and affirmed on October 9, 1969, by the Supreme Court.

The court stated with respect to income, at page 516:

"It follows that, where income is given to a class, the distributees entitled to take at any period of distribution are the members of the class who are alive at that time, or, where representation by issue is provided, the living issue of deceased members."

And with respect to principal, at page 522:

"When the time arrives for distribution of the principal upon the death of Carroll H. Carter, only living grandchildren of testator and living issue of deceased grandchildren will share on a stirpital basis."

And with respect to the various words testator used to describe his lineal descendants, at page 522:

"Although testator has provided only that 'each such equal share shall be paid over to my said grandchildren', we cannot limit testator's use to the usual, narrow definition meaning third generation. We note that in this fourth item there is a lack of technical precision, even though the will was undoubtedly lawyer drawn. In referring to his children's descendants, testator has used 'issue' seven times, 'grandchildren' twice, and 'descendants' once. Legal draftsmanship has yielded to the rhetorical rule which avoids redundancy. A will of approximately the same vintage as the Carter will furnishes a precedent for the indis-

criminate use of 'grandchildren', 'issue' and 'descendants' as reported in Ball v. Weightman, 273 Pa. 120, 123, where the court said that 'this supports the conclusion that either term was intended to include all.' "

It follows that the bequest of income in the instant case to "my children" and "issue" was a classic class gift: Wood's Estate, 321 Pa. 497, at page 500. When the gift of income is to a class, the income is distributable periodically to the living members of the class and the living issue of a deceased member, not to the estate of a deceased member of the class.

Applying the doctrine of Carter Estate, supra, testator in the instant case intended the income formerly paid to Robert W. Swift, Jr., to be paid to the latter's issue, per stirpes, throughout the term of the trust. However, the directions relating solely to income do not, in themselves, require that the identity of all income beneficiaries, including great-grandchildren, such as the children of Robert W. Swift, Jr., be ascertainable within the period required by the rule against perpetuities.

Under the common-law rule against perpetuities, which is applicable here, the persons entitled to remainder interests must under all possible circumstances be ascertainable within a period measured by a life in being at testator's death, plus 21 years. Thus, interests under a will ascertainable on the death of a grandchild may be invalid, because one's grandchildren are not necessarily "lives in being" at one's death. Here, only one of seven grandchildren was living at testator's death, namely Marjorie S. Bradley, and Robert W. Swift, Jr., was born shortly thereafter. However, testator's child, Marjorie Steel Bradley, is still alive. Therefore, all the present grandchildren, including the four children of Robert W. Swift, Jr., were born during a measuring life in being.

Hence, the income heretofore payable to Robert W. Swift, Jr., is now payable equally to his four children during the continuance of the trust.

What happens to the principal?

First, under the first and third paragraphs of item L of the will, the shares of principal to which testator's issue are entitled are to be held in trust, and the income therefrom is to be applied for the support, education and maintenance of the issue, with distribution of principal postponed until either such issue or the youngest grandchild attains 25 years of age, whichever is later. This provision is clearly valid.

Second, under the first paragraph of L, as modified by codicil C, if a grandchild or more remote issue of testator dies after the death of the survivor of testator's wife and all of his children, but before such issue or testator's youngest grandchild attains 25, whichever is later, the share of principal of such grandchild or more remote issue is to be divided among the other issue of the deceased parent. This provision violates the rule against perpetuities, and should not be given effect, because it is an invalid limitation on an absolute gift. In short, interests vesting on the death of testator's last surviving child, whether vesting in a grandchild or more remote issue, are valid. However, all interests vesting more than 21 years thereafter are invalid. As noted above, the grandchildren cannot serve as measuring lives. If testator's children are used as measuring lives, the second provision would direct shifting of interests more than 21 years after the death of the last surviving child; indeed, if no member of one line of descent ever attained 25 years of age, the interest could shift for infinity.

Generally, the construction of a will is not affected by the effect upon it of the rule against perpetuities. However, where, following a valid absolute gift, testator attempts by an additional clause, to modify the

absolute gift, and by so modifying it makes it in part too remote, the entire modification will be rejected, and the original absolute gift stands: Gray, The Rule Against Perpetuities (Little, Brown, and Company, Boston, 3rd ed., 1915), sec. 423, p. 370.

Paragraph L of testator's will makes a valid absolute gift to issue living at the death of the survivor of his wife and all of his children, to ". . . be paid unto such issue when each one shall arrive at the age of twenty-five years, and until such time the principal to which such issue is entitled shall be held in trust . . ." The foregoing clearly constitutes a valid absolute gift; the language which follows (directing a shifting of interests "if said issue shall die before arriving at said age") attempts to engraft thereon a modification which is invalid under the applicable rule against perpetuities. Under the rule set forth above, the invalid modification, ". . . and if said issue shall die before arriving at said age, the share or portion of the principal of my estate which such issue would have received shall be divided among the remaining issue of the deceased parent," must be declared invalid, and the valid, absolute gift must be then given effect without modification.

In Ring v. Hardwick, 2 Beav. 352, 48 Eng. Rep. 1217 (1840), testator directed his trustees to divide his personal estate equally among his two sons and his two daughters. The shares of his sons were to be paid to them, but the share of each daughter was to be held in trust during her life, and on her death the trust was to continue for her children, to vest in them at age 25, with gifts over in case any of such children died under 25. The court stated:

"I think that there is sufficient to be collected from the prior words in this will to give an absolute interest to the daughters; and those prior words are so connected with what follows as to show that the tes-

tator intended a restriction of that absolute interest; and the restriction not having become effectual, the whole interest remained according to the original gift."

In Brady's Estate, 47 D. & C. 458 (1943), the critical provisions are virtually identical with those in the instant case. There, testatrix provided:

"When my daughters and sons become deceased then the property to be divided between my grandchildren according to the number of families of grandchildren, each family to be given an equal portion and each grandchild to receive their portion when they reach the age of twenty-five (25).

"If either grandchild becomes deceased before the age of twenty-five (25) years leaving no issue their portion shall be equally divided among the remaining grandchildren."

The majority of this court, speaking through our revered late colleague, Judge Hunter, struck down the invalid limitation, but held that the grandchildren had indefeasibly vested remainders.

Applying this principle to the instant case, the last clause of the first paragraph of paragraph L as modified by codicil C, cannot be given effect. Accordingly, interests in principal will be ascertainable upon the death of testator's last surviving child, namely, Marjorie Steel Bradley, although the principal will not be distributable to the grandchildren and more remote issue until the youngest of them attains 25 years of age. Although the provision relating solely to distribution of *income* to the issue of Robert W. Swift, Jr., could have been invalid for remoteness, if he had died after the death of testator's last child, under the actual facts, such income interests will necessarily be valid and ascertainable upon the death of Marjorie Steel Bradley, testator's last surviving child, under the provisions governing the distribution of principal.

Therefore, the income interests of the issue of Robert W. Swift, Jr., are valid.

For these reasons, the auditing judge rules that the share of income formerly paid to Robert W. Swift, Jr. is now distributable, by representation, to his issue, who are his children, Robert W. Swift, 3rd, Rosamond Swift Emery, Madelaine B. Swift and Joan Swift.

It is to be noted that the adjudication of Judge Van Dusen filed on March 29, 1937, relating to the protection of remaindermen from possible losses which might have resulted from investments made beyond the powers appearing in the will, stated that grandchildren only are the remaindermen. Judge Van Dusen did not purport to make his adjudication controlling as to ultimate distribution. His intent was to protect remaindermen, whoever they might be, and this was accomplished to substantial benefit of all beneficiaries. Moreover, it is well established that such an adjudication is not res adjudicata or the rule of the case as to future distribution of principal. The present auditing judge holds Judge Van Dusen in great esteem, but respectfully differs from his interpretation of the instant will.

The Supreme Court in Dickson Estate, 396 Pa. 371, 374 (1959), ruled that the " 'Pay and Divide' Rule is henceforth to be taken as abolished." However, consideration must be given to ". . . what the testator understood to be the legal meaning of his language at the time he used it": Hood v. Pennsylvania Society to Protect Children from Cruelty, 221 Pa. 474, 480 (1908). See, also, opinion of Judge Shoyer in Carter Estate, supra, and the concurring opinion of the present auditing judge in Jessup Estate, 48 D. & C. 2d 1, 7.

Testator directed in paragraph L that principal "shall be divided . . ." among the issue of his deceased children and ". . . shall be paid . . ." to them

at age 25. When testator's will and codicils were executed, and at the time of his death, a long line of cases had held that the use of "pay and divide" language required that persons to whom payment was directed be living at the time of the division and payment: Moore v. Smith, 9 Watts 403 (1840); Reiff's Appeal, 124 Pa. 145 (1889); Kountz Estate (No. 1), 213 Pa. 390 (1906). This long-established general rule must be deemed to have been in the mind of our testator when his will and codicils were executed, since he employed the language embodied in the rule. This fortifies our conclusion as to his intent.

Finally, the contention that testator intended remainder interests to vest only in his grandchildren and indefeasibly so prior to the death of "all of his children" is not consistent with the other provisions of the will. Although the modification which attempts to shift principal interest until the ultimate beneficiaries reach age 25 cannot be given effect, it nevertheless clearly shows testator's intention to avoid having principal payable to a grandchild's estate. Moreover, his wife and children were the principal objects of his *bounty*, yet he did not provide that their estates should have vested interests in principal. Hence, he surely did not intend to give this greater right to the estate of a grandchild, who died during the life of a child, thereby possibly taking such share out of his blood line and distributing it to strangers.

Accordingly, the auditing judge decides that the estate of Robert Swift, Jr., deceased is not entitled to any part of the principal of the instant trust. The fund will be awarded back to the accountant-trustee for the uses and purposes of the continuing trust, and for ultimate distribution to the class of persons in existence at the death of testator's last child, at which time the class will close. . . .

Since the adjudication of December 1, 1942, which approved the third account of the trustee, certain stock dividends of six percent or less of the same class and company, were received by the trustee, particularly covering the period after May 3, 1945, the effective date of the Principal and Income Act of May 3, 1945, P. L. 416, and before September 30, 1963, effective date of 1963 amendment to Principal and Income Act of 1947. Except for two such stock dividends allocated or by apportionment found in whole to belong to income 1950-52 and then distributed (thus, pre-Catherwood Trust, 405 Pa. 61 (1961)), all the other of such stock dividends, or in the case where sold, the proceeds thereof, were transferred from principal to income in 1965 and distributed to the income beneficiaries. The accountant takes the position that the 1965 distributions were proper "and in accordance with existing law as set forth in Pew Trust, 411 Pa. 96 (1963)." Cf. Hallowell Trust, 432 Pa. 184 (1968) and Darlington Estate, 434 Pa. 198 (1969).

Notice was given to all interested parties of accountant's position as required by Local Rule 63.1 of this court. The guardian ad litem in his report specifically approves the distributions so made, concluding particularly in respect of the 1965 distributions that "It is clear that the Trustee acted in good faith and in reliance on the Supreme Court's decision in Pew Trust, which was the latest pronouncement on the issue at the time of its action in allocating small stock dividends or the proceeds of sale to income. Certainly the apparent holding in the subsequently decided Darlington Trust case should not be retroactively applied to the Trustee's prior action in making distributions." No interested party appeared at the audit and raised any objections to the said distributions. Hence, without deciding the point on the merits,

the auditing judge approves the distribution of these stock dividends.

The guardian ad litem in his carefully prepared and thorough report points out that the accountant has invested trust principal in unauthorized securities, with resultant realized losses of $29,446.18 and unrealized losses of $26,498.93. It is well established that a trustee cannot offset losses by gains resulting from investment in unauthorized investments: In re Deare, 11 T. L. R. 183 (1895). Cf. Baker v. Disbrow, 18 Hun. 29, 79 N. Y. 631 (1880). However, the gains realized from unauthorized investments in this trust estate have been very large. Moreover, all interested beneficiaries who are sui juris have approved the account, without surcharge, and agreed to indemnify accountant against loss, in an agreement which is attached hereto. Accordingly, the account will be approved, *with prejudice,* to all parties signatory to this agreement and, *without prejudice,* to Joan Swift, a minor and to any presently unascertained beneficiaries . . .

And now, February 27, 1970, the account is confirmed nisi.